**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **IN RE:**<br><br>**DEAF STAR STUDIOS, LLC,**<br><br>**Debtor,** | **CHAPTER 11**<br>**SUBCHAPTER V**<br><br>**CASE NO. 24-59255-bem** |
| **BRYAN H. KEITH,**<br><br>**Movant,**<br><br>**v.**<br><br>**DEAF STAR STUDIOS, LLC,**<br><br>**Respondent.** | **CONTESTED MATTER** |

**NOTICE OF HEARING**

**PLEASE TAKE NOTICE** that Bryan H. Keith has filed his *Motion to Confirm No Automatic Stay is in Effect or in the Alternative for Relief from Automatic Stay* (the "Motion") and related papers with the Court seeking an order granting relief from the automatic stay.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion at **11:00 A. M**. on **September 24, 2024** in **Courtroom 1402**, United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303, which may be attended in person or via the Court's Virtual Hearing Room. You may join the Virtual Hearing Room through the "Dial-In and Virtual Bankruptcy Hearing Information" link at the top of the homepage of the Court's website, www.ganb.uscourts.gov, or the link on the judge's webpage, which can also be found on the Court's website. Please also review the "Hearing Information" tab on the judge's webpage for further information about the hearing. You should be prepared to appear at the hearing via video, but you may leave your camera in the off position until the Court instructs otherwise. Unrepresented persons who do not have video capability may use the telephone dial-in information on the judge's webpage.

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleadings with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including

addresses) you served the response. Mail or deliver your response so that it is received by the Clerk before the hearing. The address of the Clerk's Office is: Clerk, U. S. Bankruptcy Court, Suite 1340, 75 Ted Turner Drive, SW, Atlanta Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

**If a hearing on the Motion cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the Motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.**

Dated: September 4, 2024.

**JONES WALDEN LLC**

*/s/ Eric J. Breithaupt*
Eric J. Breithaupt
Georgia Bar No. 596142
699 Piedmont Ave NE
Atlanta, GA 30308
(404) 564-9300
EBreithaupt@joneswalden.com
*Attorney for Bryan H. Keith*

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **IN RE:**<br><br>**DEAF STAR STUDIOS, LLC,**<br><br>**Debtor,** | **CHAPTER 11**<br>**SUBCHAPTER V**<br><br>**CASE NO. 24-59255-bem** |
| **BRYAN H. KEITH,**<br><br>**Movant,**<br><br>**v.**<br><br>**DEAF STAR STUDIOS, LLC,**<br><br>**Respondent.** | **CONTESTED MATTER** |

**MOTION TO CONFIRM NO AUTOMATIC STAY IS IN EFFECT OR IN THE ALTERNATIVE FOR RELIEF FROM AUTOMATIC STAY**

COMES NOW Bryan H. Keith ("Movant"), through his undersigned counsel, and respectfully moves the Court for entry of an Order confirming that no automatic stay is in effect or in the alternative, granting relief from the automatic stay (the "Motion"). In support of the Motion, Movant shows the Court the following:

**<u>JURISDICTION</u>**

1. This Court has jurisdiction to decide this Motion pursuant to 28 U.SC. § 1334.

2. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (G). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

3. On the morning of a duly scheduled and advertised foreclosure sale, on September 3, 2024 ("Petition Date"), Deaf Star Studios, LLC ("Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., (the "Bankruptcy Code") under Subchapter V. This is the Debtor's second Subchapter V case, as it previously sought protection under the Bankruptcy Code on March 4, 2024 before this Court (Case Number 24-52337-bem) which was dismissed by Order dated July 12, 2024 [Prior Case Doc. 51] for failure to timely file a Plan of Reorganization.

4. On or about September 3, 2020, T'Challa S. Pesante, David M. Cunningham, and Luis A. Beltre (the "Borrowers") executed and delivered to Movant a certain Promissory Note Secured by Deed to Secure Debt in the original principal amount of $435,000.00 (the "Note"). A true and correct copy of the Note is attached hereto and incorporated herein as **Exhibit "A"**.

5. On June 22, 2023, Borrowers executed and delivered to Movant a certain Deed to Secure Debt, Security Agreement and Fixture Filing as recorded on the Records of the Clerk, Fulton County Superior Court, at Deed Book 66994, Page 241 (the "Security Deed"), whereby Borrowers pledged the real property located at 741 Lambert Drive, Atlanta, Georgia 30324 (the "Property"), as security for the Note. A true and correct copy of the Security Deed is attached hereto and incorporated herein as **Exhibit "B"**. The Debtor is not a party to either the Note or the Security Deed. The Debtor operates the Property as a recording studio.

6. On the same day, Pesante, Cunningham, and Beltre transferred the Property to the Debtor for no consideration by Limited Warranty Deed as recorded on the Records of the Clerk, Fulton County Superior Court, at Deed Book 66997, Page 150 (the "Limited Warranty Deed"). A true and correct copy of the Limited Warranty Deed is attached hereto and incorporated herein as

**Exhibit "C"**. By virtue of that Limited Warranty Deed, for which it paid nothing, the Debtor claims an interest in the Property.

7. The Security Deed and Note (collectively, the "Loan Documents") provide that in the event of a failure to pay a monthly installment when due, the Movant could elect, at his option, to declare the entire principal balance and all accrued interest at once due and payable and may, without notice, enforce the immediate payment of all amounts due with interest thereafter and attorneys' fees.

8. The Loan Documents further provided for a maturity date of September 4, 2023.

9. Borrowers defaulted in payment under the Loan Documents by failure to pay the Note in full at maturity. Movant elected and declared the entire principal and accrued at once due and payable.

10. On or about February 2, 2024, Movant sent Borrowers a Notice of Foreclosure Sale (the "Foreclosure Notice"). The Foreclosure Notice scheduled a foreclosure sale for March 5, 2024. As noted, the Debtor filed its prior Chapter 11 case on the eve of bankruptcy to forestall the sale.

11. The Debtor filed this second SubChapter V case on the morning of a newly scheduled foreclosure sale following the dismissal of the prior case on July 12, 2024.

12. Pursuant to the terms of the Loan Documents, Borrowers are indebted for the principal sum, plus interest, late fees, and attorneys' fees for a payoff amount of $560,596.47 through July 6, 2024, with fees and expenses continuing to accrue.

13. The Voluntary Petition lists the Property as the Debtor's principal place of business. T'Challa Pesante, as managing member of the Debtor, executed the Petition (Doc. No. 1).

14. Upon information and belief, Movant is the only creditor in this Bankruptcy Case, other than real estate taxes which remain unpaid.

15. Debtor did not purchase the property, but merely received the Property, without the payment of any consideration. At best, the Debtor has a "straw man" interest in the Property.

16. Following the filing of the instant case, the Debtor has not requested the imposition of an automatic stay. Based upon the application of 11 U.S.C. §362(n), Movant reasonably believed that no automatic stay went into effect upon the filing of the Petition, and consequently, Movant's counsel cried the scheduled foreclosure sale during the legal hours of sale as evidenced by the "script" attached hereto as **Exhibit "D"** and was the highest and best bid at $560,596.47. Pending order of this Court, Movant has not recorded any Deed Under Power of Sale.

**RELIEF REQUESTED**

17. Movant requests the entry of an order confirming that no automatic stay is in effect, or in the alternative, for relief from stay with respect to the Property "cause" including the bad faith filing of the instant case, a lack of adequate protection and on the basis that the Debtor has no legal interest in the Property.

**BASIS FOR RELIEF**

18. Section 362(n)(B) provides that the automatic stay does not apply in a small business chapter 11 case where there has been a prior dismissal of another case within two years. "As is relevant here, under §362(n)(1)(B) the automatic stay does not come into effect if three elements are satisfied: (a) the debtor was a debtor in a small business case; (b) that case was dismissed; and (c) the order dismissing that case became final in the two-year period ending on the date of the order for relief." *In re Brendan Gowing, Inc.*, 2024 Bankr. Lexis 1732, (Bankr. S.D. Tx. Case Number 24-32631, July 26, 2024)(finding no stay on virtually identical facts); *see also*, *Abundant Life Worship Center of Hinesville, GA, Inc.* (Bankr. S.D. Ga. Case Number 20-40959-EJC; December 16, 2020).

19. All three of the factors set forth in the Bankruptcy Code and articulated in *Brendan Gowing* and *Abundant Life* are present here. Moreover, the Debtor has not moved to impose an automatic stay, and even if it did, it could not meet the requirements of §362(n)(2)(B) which requires a showing of changed circumstances and the likelihood of obtaining a confirmed plan. Movant is therefore entitled to the entry of an order confirming that there is no stay in effect such that Mr. Keith may record his Deed Under Power of Sale as the high bidder at the foreclosure sale that was cried on September 3, 2024.

20. To the extent that a stay is in effect, Movant alternatively seeks the entry of an order lifting and/or annulling the automatic stay. Section 362(d) of the Bankruptcy Code provides in pertinent part that:

> d. On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay . . .
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d)(1).

21. "An automatic stay may be terminated for 'cause' pursuant to section 362(d)(1) of the Bankruptcy Code if a petition was filed in bad faith." *In re Sterling Bluff Investors, LLC*, 515 B.R. 902, 921 (Bankr. S.D. Ga. 2014) (citation omitted).

22. The Eleventh Circuit has articulated factors considered by courts when determining if a chapter 11 petition is filed in bad faith and merely to frustrate the creditor's legitimate remedies: (1) the debtor has only one asset, consisting of the property at issue; (2) the debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors; (3) the debtor has few employees; (4) the property is subject of a foreclosure action; (5)

the debtor's financial problems involve essentially a dispute between the debtor and a secured creditor which can be resolved in an independent non-bankruptcy forum; and (6) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights. *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1395 (11th Cir. 1984); *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984)

23. Such aggravating elements are clearly present in the instant Case. Specifically, (i) the Property appears to be the Debtor's only material asset; (ii) Movant's secured claim is substantial and, based on the Voluntary Petition, the only creditor in this Bankruptcy Case other than unpaid real estate taxes; (iii) the Property has twice been subject to foreclosure scheduled for March 5, 2024 and September 3, 2024; (iv) this bankruptcy case is essentially a two-party dispute which can be resolved in a non-bankruptcy forum; (v) based upon testimony in the prior case, the Debtor has no employees; and, (vi) the Voluntary Petition was filed on the eve of foreclosure, thus evidencing an intent to hinder, delay, and frustrate the Movant's legitimate efforts in enforcing his rights.

24. As noted, the indebtedness owed to Movant fully matured exactly a year ago on September 4, 2023. Both prior to the maturity date and after, the Debtor has made multiple efforts to refinance the debt owed to the Movant with third parties. None of those efforts has been successful, and in fact, each potential buyer/refinance party tendered by the Debtor has declined to pay the full indebtedness owed to the Movant. Collectively, the history of the relationship between the Movant and the Borrowers and the factors present demonstrate that cause exists to lift and/or annul the automatic stay as to the Movant and the subject Property.

25. Movant requests that the Court lift and/or annul the automatic stay to permit Movant to exercise Movant's state law remedies with respect to the Property and otherwise pursue a sale under power.

26. Movant requests that the Court grant relief from the automatic stay, instanter, without the necessity of any fourteen day stay, all as authorized by the provisions of Federal Rule of Bankruptcy Procedure 4001(a)(3).

WHEREFORE, Movant requests the entry of an order confirming that there is no stay in effect, or in the alternative, for an order lifting and/or annulling the automatic stay as to the Property, along with such other relief as the Court deems appropriate.

Respectfully submitted this 4th day of September, 2024.

**JONES WALDEN LLC**
*/s/ Eric J. Breithaupt*
Eric J. Breithaupt
Georgia Bar No. 596142
699 Piedmont Ave NE
Atlanta, GA 30308
(404) 564-9300
EBreithaupt@joneswalden.com
*Attorney for Bryan H. Keith*

**Exhibit "A"**

# PROMISSORY NOTE SECURED BY DEED TO SECURE DEBT

$435,000.00 Dated: September 3 2020

FOR VALUE RECEIVED

☐ I individually, ☑ We jointly and severally, T"Challa S Pesante, David M Cunningham, Luis A Beltre as a Georgia ("Borrower"), promises to pay to the order of BRYAN H KEITH ("Lender"), located at 4210 Conway Valley Rd Atlanta Ga 30327

or such other place as the holder of this note may from time to time designate in writing, the principal sum of ($ 435,000.00

four hundred thirty five thousand and xx/100

or so much thereof as may be advanced in lawful money of the United States, with interest accruing on the unpaid principal balance from time to time remaining unpaid prior to maturity as follows:

1) Payments of Principal and Interest. The principal and interest of this note shall be payable as follows:

a) Interest on this note shall accrue at the rate of 7.5 % per annum and shall be calculated at a daily rate equal to 1/360th of the annual percentage rate that this note bears, based on the actual number of days elapsed.

b) A payment representing interest only from the date hereof through the month of shall be due and payable on the day of , 20 .

c) Installments of principal and interest in the amount of: dollars ($3041.58 ) shall be due and payable monthly commencing on the 1st day of October , 2020, with a like installment due and payable on the 1st day of each succeeding month thereafter to maturity. All payments made as scheduled on this note shall be applied, to the extent thereof, first to accrued but unpaid interest and the balance to unpaid principal.

d) ☑ On the maturity date, the entire outstanding principal amount of the original loan amount of dollars ($435,000.00 ) shall be due and payable in one balloon payment.

☐ From the date this note is signed until the date it is paid in full.

2) Late Charge: Any above noted payment which is at least 15 days past due, shall be subject to a late charge of $100.00 And an additional $25.00 per day until the payment is received. If any balloon payment is late, it shall be subject to a late fee of $ 100.00 per day.

3) Maturity. This note shall mature (i.e., all outstanding principal, together with all accrued unpaid interest, shall be due and payable in full) on September 4 2023

9) All payments due under this Note shall be paid when due, without deduction or setoff of any kind. No failure or delay on the part of Lender in exercising any right hereunder shall operate as a waiver of such right. The remedies herein provided are cumulative of any remedies provided by law and may be pursued concurrently or consecutively.

10) In addition to any other remedies available to Lender if this Note is not paid in full at the Maturity Date, Borrowers shall pay to Lender an Overdue Loan Fee, which fee shall be due at the time this Note is otherwise paid in full. The "Overdue Loan Fee" shall be determined based upon the outstanding principal balance of this Note as of the Maturity Date and shall be:

(a) one percent (1.0%) Of such principal balance if the Note is paid in full on or after thirty (30) days after the Maturity Date but less than sixty (60) days after the Maturity Date, or

(b) two percent (2.0%) of such principal balance if the Note is paid in full on or after sixty (60) days after the Maturity Date.

11) The obligations of Borrower to Lender under this Note and the Additional Obligations herein remain in full force and effect until Lender has received payment in full of all obligations. The obligations of Borrower to Lender under the Note shall be reinstated in the event any claim shall be made asserting an interest in all or any part of any payment(s) received by Lender prior to the expiration of any applicable preference, fraudulent conveyance or similar period pursuant to any bankruptcy, insolvency, reorganization, moratorium or similar law, or at law or equity. Each Borrower expressly agrees that Lender shall not be required first to institute any suit or to exhaust its remedies against any Borrower or any other person or party to become liable hereunder or against any collateral, in order to enforce this Note or the Additional Obligations and expressly agree that, notwithstanding the occurrence of any of the foregoing, each of Borrower shall be and remain, directly and primarily liable for all sums due under this Note, the Loan Documents and the Additional Obligations. On disposition by Lender of any collateral securing the Note or the Additional Obligations, each of Borrower shall be and shall remain jointly and severally liable for any deficiency.

12) Borrowers agree that the interest rate contracted for includes the interest rate set forth herein and any other charges, fees, costs and expenses incidental to this transaction paid by Borrowers to the extent the same are deemed interest under applicable law. If, for any circumstance whatsoever, the performance, or fulfillment of the provisions hereof or of any agreement between Borrowers and Lender, shall, at the time such performance or fulfillment is due exceed the limit for interest prescribed by law, then ipso facto the obligation to be performed or fulfilled shall be reduced to such limit. If, for any circumstance whatsoever, the Lender should ever receive as interest an amount which would exceed the highest lawful interest rate, the amount which would be excessive interest shall be applied to the balance owing hereunder (or at the option of Lender be paid over to Borrower) and not to the payment of interest. This provision shall control every other provision of all agreements between Lender and Borrowers hereof. All


Deeds.com

loan fees or other charges, which, if qualified as interest under applicable usury statutes, shall be averaged over the term of the Note at the maximum permissible rate allowed by law.

13) Commercial Property: **(OPTIONAL) - Not** applicable unless initialed by Borrower and Lender to this Note) Borrower represents and warrants to Lender that the sums represented by this Note are being used for business, investment or commercial purposes, and not for personal, family or household purposes.

TP ____________________ ____________________
Borrower (Initials) Lender (Initials)

14) In case of renewal or extension of this Note, at any or times, all of the provisions of the Loan Documents shall remain in full force and effect as security for the payment of the renewed or extended Note and for the performance of the obligations of Borrower under the Loan Documents.

15) This Note and the Loan Documents are made in and shall be governed by the State of Georgia. Upon Lender's request, the venue of any legal action in connection with this Note or the Loan Documents shall be in FULTON County, Georgia. The provisions thereof and all rights and obligations of the parties hereunder shall be governed by and construed in accordance with the internal laws of the State of Georgia, and to the extent they preempt such laws, the laws of the United States; provided, that if any covenant, agreement or waiver on the part of Borrowers or right or remedy of Lender shall be invalid or unenforceable under such laws, but would be valid and enforceable under the laws of Georgia State, the internal laws of Georgia shall apply. The internal laws of shall apply to the appointment of trustees, to the creation of liens and to any foreclosure, foreclosure sale, trustee's sale, appointment of a receiver or other remedy with respect to the collateral.

16) Attorney's Fees and Costs: Borrower shall pay all costs incurred by Lender in collecting sums due under this Note after a default, including reasonable attorneys' fees, whether or not suit is brought. If Borrower or Lender sues to enforce this Note or obtain a declaration of its rights hereunder, the prevailing party in any such proceeding shall be entitled to recover its reasonable attorneys' fees and costs incurred in the proceeding (including those incurred in any bankruptcy proceeding or appeal) from the non-prevailing party.

17) Special Provisions:
$35,000.00 of the total sum of the loan has already been received and is hereby acknowledged remaining balance on the loan of $400,000.00 to be wired to closing attorneys trust account to close on the real property known as 741 Lambert Dr NE Atlanta GA 30324

18) Having reviewed, accepted and approved this Note with all its terms and conditions, this Note shall supersede any and all other agreements, and is hereby accepted in its final form

19) Integration: There are no verbal or other agreements which modify or affect the terms of this Note. This Note may not be modified or amended except by written agreement signed by Borrower and Lender.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Promissory Note.

IN WITNESS WHEREOF, borrower has executed, or has caused to be executed, this instrument on the day and year first above written

Signed, sealed and delivered in the presence of:

[signature]
Unofficial Witness

Corey Luild
Print Name

[signature]
Borrower

TCHACCA PESANTE
Print Name

[signature]
Borrower

David Cunningham
Print Name

*Construe all terms with the appropriate gender and quantity required by the sense of this instrument.*

STATE OF GA )

COUNTY OF COBB )

Notary Public: [signature]

My Commission Expires: 05/25/2024

ALEXIS TURNER NOTARY PUBLIC GEORGIA EXPIRES May 25, 2024 COBB COUNTY

**DO NOT DESTROY THIS NOTE**

WHEN PAID this original Note together with the Deed of Trust securing the same, must be surrendered to the Borrower for cancellation and retention before any reconveyance can be processed.

**Exhibit A**

"LEGAL DESCRIPTION"

All that tract or parcel of land lying and being Land Lots 49 and 50 of the 17th District, Fulton County, Georgia and being more particularly described as follows:

Begin at a point marked by an iron pin found located at the intersection of the southerly right-of-way line of Lambert Street (40' right-of-way) and the westerly right-of-way line of Manchester Street (501 right-of-way) which point is the True Point of Beginning; thence running *along the westerly right-of-way line of Manchester Street south O degrees* 43 minutes 46 seconds west a distance of 296.55 fret to a point marked by an iron pin set; thence leaving said westerly right-of-way line of Manchester Street and running north 87 degrees 18 minutes 29 seconds west a distance of 245.50 feet to a point marked by an iron pin set; thence running north 61 degrees 23 minutes 3 seconds west a distance of 104.10 feet to a point marked by an iron pin found located on the southeasterly right-of-way line of Lambert Street; thence running along the southeasterly right-of-way line of Lambert Street north 26 degrees 7 minutes 14 seconds east a distance of 261.71 feet to a point marked by an iron pin found; thence running along the southerly right-of-way line of Lambert Street north 89 degrees 57 minutes 32 seconds east a distance of 225.17 feet to a point marked by an iron pin found which is the True Point of Beginning, and containing 1.884 acres all as more particularly depicted upon that certain survey dated January 25, 2000 by A. S. Giometti & Associates, Inc., 67 Peachtree Park Drive, N.E., Atlanta, Georgia 30309, Telephone Number (404) 355-8669, said survey bearing the seal of A. S. Giometti, Georgia Registered Land Surveyor No. 1125.



Deeds.com

**Exhibit B**

Amortization Schedule through payoff date of September 1 2023

Date Interest Principal Balance
Oct, 2020 $2,719 $323 $434,677
Nov, 2020 $2,717 $325 $434,352
Dec, 2020 $2,715 $327 $434,025
2020 $8,150 $975 $434,025
Jan, 2021 $2,713 $329 $433,697
Feb, 2021 $2,711 $331 $433,366
Mar, 2021 $2,709 $333 $433,032
Apr, 2021 $2,706 $335 $432,697
May, 2021 $2,704 $337 $432,360
Jun, 2021 $2,702 $339 $432,021
Jul, 2021 $2,700 $341 $431,679
Aug, 2021 $2,698 $344 $431,336
Sep, 2021 $2,696 $346 $430,990
Oct, 2021 $2,694 $348 $430,642
Nov, 2021 $2,692 $350 $430,292
Dec, 2021 $2,689 $352 $429,940
2021 $32,413 $4,086 $429,940
Jan, 2022 $2,687 $354 $429,585
Feb, 2022 $2,685 $357 $429,229
Mar, 2022 $2,683 $359 $428,870
Apr, 2022 $2,680 $361 $428,509
May, 2022 $2,678 $363 $428,145
Jun, 2022 $2,676 $366 $427,780
Jul, 2022 $2,674 $368 $427,412
Aug, 2022 $2,671 $370 $427,041
Sep, 2022 $2,669 $373 $426,669
Oct, 2022 $2,667 $375 $426,294
Nov, 2022 $2,664 $377 $425,917
Dec, 2022 $2,662 $380 $425,537
2022 $32,096 $4,403 $425,537
Jan, 2023 $2,660 $382 $425,155
Feb, 2023 $2,657 $384 $424,771
Mar, 2023 $2,655 $387 $424,384
Apr, 2023 $2,652 $389 $423,995
May, 2023 $2,650 $392 $423,603
Jun, 2023 $2,648 $394 $423,209
Jul, 2023 $2,645 $397 $422,812
Aug, 2023 $2,643 $399 $422,413
Sep, 2023 $2,640 $401 $422,012



Deeds.com

## ALLONGE TO PROMISSORY NOTE

This Allonge is made to that certain Promissory Note dated September 3, 2020 in the principal amount of Four Hundred and Thirty Five Thousand ($435,000), from T'Challa S. Pesante, David M. Cunnigham, and Luis A. Beltre, as Borrowers, to the order of the Bryan H. Keith, as Lender ("Allonge").

Maker and Lender agree that the Promissory Note was intended to be signed by all Borrowers listed above. Borrowers and Lender hereby affirm and agree to be bound by the terms of the Promissory Note as if all Borrowers had signed the Promissory Note on September 3, 2020.

This Allonge is intended to be attached to and made a permanent part of the Note.

BORROWERS:

Name: T'Challa S. Pesante ____________ Date

Name: David M. Cunningham ____________ Date

Name: Luis A. Beltre ____________ Date

LENDER:

[signature]
Name: Bryan H. Keith

Jun 22 2023
Date

06-22-2023

[signature]

JACARIS BROWNING
NOTARY PUBLIC
Cobb County
State of Georgia
My Comm. Expires Mar. 27, 2027

**Exhibit "B"**

Deed Book 66994 Page 241
Filed and Recorded 07/17/2023 10:32:00 AM
2023-0183883
CHÉ ALEXANDER
Clerk of Superior Court
Fulton County, GA
Participant IDs: 2979894615
7067927936

[SPACE ABOVE RESERVED FOR RECORDER'S USE]

## CLERK'S COVER SHEET / HB 974 DISCLOSURES

Please Record and Return to: Weissman PC
3500 Lenox Road, 4th Floor
Atlanta, GA 30326

1. Date of the Document: June 22, 2023
2. Signatories to the Document: Grantor - David M. Cunningham, T'Challa S. Pesante and Luis A. Beltre
3. Mailing Address of Grantee: 4210 Conway Valley Rd NW, Atlanta, GA 30327
4. Map and Parcel ID No(s).: 17 005000010432
5. Original Loan Amount: $435,000.00
6. Initial Maturity Date: September 1, 2023
7. Intangible Recording Tax: $0.00
8. Intangible Recording Tax Exemption Authority: (if applicable) Rule 560-11-8-.14
   Exemption Reason (if exempt) Maturity Date

NOTE: THIS COVER SHEET DOES NOT MODIFY THE TERMS OF THE ATTACHED INSTRUMENT.

Prepared By:
Weissman PC
3500 Lenox Road, 4th Floor
Atlanta, Georgia 30326

Reserved For Recording Above This Line

**STATE OF GEORGIA**
**COUNTY OF FULTON**

**THIS INSTRUMENT CONSTITUTES AND IS FILED AS A FIXTURE FILING UNDER OFFICIAL CODE OF GEORGIA ("O.C.G.A.") SECTION 11-9-502. THE NAME AND MAILING ADDRESS OF DEBTOR AND SECURED PARTY, A STATEMENT INDICATING THE TYPES, OR DESCRIBING THE ITEMS OF COLLATERAL AND OTHER INFORMATION REQUIRED TO COMPLY WITH SAID O.C.G.A. SECTION 11-9-502 ARE DESCRIBED HEREIN.**

## DEED TO SECURE DEBT, SECURITY AGREEMENT, AND FIXTURE FILING

THIS DEED TO SECURE DEBT, SECURITY AGREEMENT, AND FIXTURE FILING (hereinafter referred to as this Deed), is made and entered into this 22nd **day of** June, **2023**, by and between **David M. Cunningham, T'Challa S. Pesante, and Luis A. Beltre**, party of the first part, as grantor (hereinafter referred to as Borrower), and **Bryan H. Keith**, party of the second part, as grantee (hereinafter referred to as Lender).

## WITNESSETH:

THAT FOR AND IN CONSIDERATION of the sum of Ten and No/100 Dollars ($10.00) and other valuable considerations, the receipt and sufficiency whereof are hereby acknowledged, and in order to secure the indebtedness and other obligations of Borrower hereinafter set forth, Borrower does hereby grant, bargain, sell, convey, assign, transfer, pledge and set over unto Lender and the successors and assigns of Lender, WITH POWER OF SALE, all of the following described land and interests in land, estates, easements, rights, improvements, personal property, fixtures, equipment, furniture, furnishings, appliances and appurtenances (hereinafter referred to collectively as the Premises):

(a) All those tracts, pieces or parcels of land more particularly described in Exhibit A attached hereto and by this reference made a part hereof (hereinafter collectively referred to as the Land).

(b) All buildings, structures and improvements of every nature whatsoever now or hereafter situated on the Land, and all gas and electric fixtures, radiators, heaters, engines and machinery, boilers, ranges, elevators and motors, plumbing and heating fixtures, carpeting and other floor coverings, fire extinguishers and any other safety equipment required by governmental regulations or law, washers, dryers, water heaters, mirrors, mantels, air conditioning apparatus, refrigerating plants, refrigerators, cooking apparatus and appurtenances, awnings and storm sashes, which are or shall be attached to said buildings, structures or improvements and all other furnishings, furniture, fixtures, machinery, equipment, appliances, building supplies and materials, books and records, general intangibles and personal property of every kind and nature whatsoever now or hereafter owned by Borrower and located in or on the Premises, including all extensions, additions, improvements, betterments, after-acquired property, renewals, replacements and

substitutions, or proceeds from a permitted sale of any of the foregoing; all tradenames, trademarks, servicemarks, logos and goodwill related thereto which in any way now or hereafter belong, relate or appertain to the Premises or any part thereof or are now or hereafter acquired by Borrower; and all equipment, fixtures, and general intangibles constituting proceeds acquired with cash proceeds of any of the property described hereinabove, all of which are hereby declared and shall be deemed to be fixtures and accessions to the Land and a part of the realty as between the parties hereto and all persons claiming by, through or under them, and which shall be deemed to be a portion of the security for the indebtedness herein described and to be secured by this Deed. The location of the above described collateral is also the location of the Land.

(c) All easements, rights-of-way, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, minerals, flowers, shrubs, crops, trees, timber and other emblements now or hereafter located on the Land or under or above the same or any part or parcel thereof, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances, reversion and reversions, remainder and remainders, whatsoever, in any way belonging, relating or appertaining to the Premises or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Borrower.

(d) All income, rents, issues, profits, and revenues of the Premises from time to time accruing (including without limitation all payments under leases or tenancies, proceeds of insurance, condemnation payments, tenant security deposits whether held by Borrower or in a trust account, and escrow funds), and all the estate, right, title, interest, property, possession, claim and demand whatsoever at law, as well as in equity, of Borrower of, in and to the same; reserving only the right to Borrower to collect the same so long as no Default exists hereunder.

(e) All payments and income due Borrower arising from any interest rate swap agreement.

(f) All contracts between Borrower and architects, contractors and subcontractors for design and construction of buildings and improvements to be erected and installed on the Land, and all plans and specifications for such buildings and improvements, and water taps, sewer taps, and all permits, consents, approvals, licenses, authorizations and other rights granted by or obtained from any governmental entity with respect to the Premises.

(g) All of all funds pledged by Borrower to Lender under any pledged account agreement made by Borrower to Lender in connection with the Loan.

TO HAVE AND TO HOLD the Premises and all parts, rights, members and appurtenances thereof, to the use, benefit and behoof of Lender and the successors, successors-in-title and assigns of Lender, IN FEE SIMPLE forever; and Borrower covenants that Borrower is lawfully seized and possessed of the Premises as aforesaid, and has good right to convey the same, that there are no easements, restrictions, or prior liens or encumbrances except for those matters (hereinafter referred to as the Permitted Encumbrances) expressly set forth in Exhibit B attached hereto and by this reference made a part hereof, and that Borrower does warrant and will forever defend the title thereto against the claims of all persons whomsoever, except as to the Permitted Encumbrances. By execution hereof by the Grantor and acceptance hereof by Grantee, the parties hereto hereby affirmatively state that they intend to create and establish a perpetual or indefinite security interest in favor of Grantee in the Premises conveyed hereby pursuant to Official Code of Georgia, Annotated ("O.C.G.A.") Section 44-14-80(a)(a) or Section 44-14-80(a)(2) as applicable, and agree that title to the Premises conveyed hereby shall not revert to Grantor until the expiration of the longest period of time permitted under whichever of said subsections as shall be applicable to this conveyance, or if later, the date determined in accordance with O.C.G.A Section 44-14-80(b) or Section 44-14-80(c), as applicable, if any portion or all of the indebtedness secured hereby is extended or renewed.

This Deed is intended to operate and is to be construed as a deed passing the title to the Premises to Lender and is to be made under those provisions of the existing laws of the State of Georgia relating to deeds to secure debt, and not as a mortgage, and is given to secure the payment of the following described indebtedness (hereinafter referred to collectively as the Secured Indebtedness);

(a) The debt evidenced by that certain Promissory Note as amended, restated, and/or supplemented from time to time (hereinafter referred to as the Note) dated Setpember 3, 2020 made by Borrower to the order of Lender in the principal face amount of **Four Hundred and Thirty Five Thousand Dollars And No/100 Dollars (U.S. $435,0000.00)**, with the final payment of said Note being due on or before **September 1, 2023;** together with any and all renewals, modifications, consolidations and extensions of the indebtedness evidenced by the Note;

(b) Any and all additional advances made by Lender to protect or preserve the Premises or the security interest created hereby on the Premises, or for taxes, assessments or insurance premiums as hereinafter provided, or for performance of any of Borrower's obligations hereunder or for any other purpose provided herein (whether or not the original Borrower remains the owner of the Premises at the time of such advances); and

(c) Any and all other indebtedness now owing or which may hereafter be owing by Borrower to Lender, now existing or hereafter coming into existence, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, due or to become due, and all renewals, modifications, consolidations and extensions thereof.

Should the Secured Indebtedness be paid according to the tenor and effect thereof when the same shall become due and payable, and should Borrower perform all covenants herein contained in a timely manner, then this Deed shall be canceled and surrendered.

Borrower hereby further covenants and agrees with Lender as follows:

## ARTICLE I

**1.01** Payment of Indebtedness. Borrower shall pay the Note according to the tenor thereof and the remainder of the Secured Indebtedness promptly as the same shall become due.

**1.02** Taxes, Liens and Other Charges.

(a) Borrower shall pay, on or before the due date thereof, all taxes, assessments, levies, license fees, permit fees and all other charges (in each case whether general or special, ordinary or extraordinary, or foreseen or unforeseen) of every character whatsoever (including all penalties and interest thereon) now or hereafter levied, assessed, confirmed or imposed on, or in respect of, or which may be a lien upon, the Premises, or any part thereof, or any estate, right or interest therein, or upon the rents, issues, income or profits thereof, and shall submit to Lender such evidence of the due and punctual payment of all such taxes, assessments and other fees and charges as Lender may require.

(b) Excluding only state and federal income taxes imposed on Lender, Borrower shall pay, on or before the due date thereof, all taxes, assessments, charges, expenses, costs and fees which may now or hereafter be levied upon, or assessed or charged against, or incurred in connection with, the Note, the other Secured Indebtedness, this Deed or any other instrument now or hereafter evidencing, securing or otherwise relating to the Secured Indebtedness, and shall submit to Lender such evidence of the due and punctual payment of all such taxes, assessments, charges, expenses, costs and fees as Lender may require.

(c) Borrower shall pay, on or before the due date thereof, (i) all premiums on policies of insurance covering, affecting or relating to the Premises, as required pursuant to Paragraph 1.03; (ii) all premiums on life insurance policies, if any, collaterally assigned or to be collaterally assigned to Lender; and (iii) all ground rentals, other lease rentals and other sums, if any, owing by Borrower and becoming due under any lease or rental contract affecting the Premises. Borrower shall submit to Lender such evidence of the due and punctual payment of all such premiums, rentals and other sums as Lender may require.

(d) In the event of the passage of any state, federal, municipal or other governmental law, order, rule or regulation, subsequent to the date hereof, in any manner changing or modifying the laws now in force governing the taxation of deeds to secure debt or security agreements or debts secured thereby or the manner of collecting such taxes so as to adversely affect Lender, Borrower will pay any such tax on or before the due date thereof. If Borrower fails to make such prompt payment or if, in the opinion of Lender, any such state, federal, municipal, or other governmental law, order, rule or regulation prohibits Borrower from making such payment or would penalize Lender if Borrower makes such payment or if, in the opinion of Lender, the making of such payment might result in the imposition of interest beyond the maximum amount permitted by applicable law, then the entire balance of the Secured Indebtedness and all interest accrued thereon shall, at the option of Lender, become immediately due and payable.

(e) Borrower will not suffer any mechanic's, materialman's laborer's, statutory or other lien to be filed of record and to remain outstanding against the Premises for a period in excess of thirty (30) days from the date of filing of such lien.

**1.03 Insurance.**

(a) Borrower shall procure for, deliver to and maintain for the benefit of Lender during the term of this Deed, original paid up insurance policies of such insurance companies, in such amounts, in such form and substance, and with such expiration dates as are acceptable to Lender and containing (except for liability policies) non-contributory standard mortgagee clauses, their equivalent or a satisfactory mortgagee loss payable endorsement in favor of Lender, providing the following types of insurance covering the Premises and the interest and liabilities incident to the ownership, possession and operation thereof:

(i) All risk hazard insurance, insuring the Premises against loss or damage by all hazards and such other insurance on the Premises or any replacements or substitutions therefore as provided in the Loan Agreement or in the loan commitment letter issued in connection with this loan, and as may from time to time be reasonably required by Lender against all other insurance casualties which at the time are commonly insured against in the case of properties of similar character and location;

(ii) Public liability insurance covering all liabilities incident to the construction, ownership, possession and operation of the Premises, naming Lender as an additional insured thereunder; and

(iii) Workers compensation insurance meeting legal minimum requirements.

All insurance shall be carried with companies and in amounts reasonably satisfactory to Lender, and Borrower shall deliver to Lender from time to time at Lender's request schedules setting forth all insurance then in effect and if applicable, certificates showing the Lender as loss payee or additional insured thereunder. All such policies of insurance must provide that the insurer shall give Lender at least thirty (30) days prior written notice of cancellation, termination or reduction in coverage, and that no act or omission by the insured shall invalidate or diminish the insurance furnished to Lender.

(b) Lender is hereby authorized and empowered, at its option, to adjust or compromise any loss under any insurance policies maintained pursuant to this Paragraph 1.03, and to collect and receive the proceeds from any such policy or policies. Each insurance company is hereby authorized and directed to make payment for all such losses directly to Lender, instead of to Borrower and Lender jointly. In the event any insurance company fails to disburse directly and solely to Lender but disburses instead either solely to Borrower or to Borrower and Lender jointly, Borrower agrees immediately to endorse and transfer such proceeds to Lender. Upon the failure of Borrower to

endorse and transfer such proceeds as aforesaid, Lender may execute such endorsements or transfers for and in the name of Borrower and Borrower hereby irrevocably appoints Lender as Borrower's agent and attorney-in-fact so to do. After deducting from said insurance proceeds all of its expenses incurred in the collection and administration of such sums, including reasonable attorney's fees actually incurred at prevailing hourly rates, Lender may apply the net proceeds or any part thereof, at its option, (i) to the payment of the Secured Indebtedness, whether or not due and in whatever or not due and in whatever order Lender elects, (ii) to the repair and/or restoration of the Premises, and/or (iii) for any other purposes or objects for which Lender is entitled to advance funds under this Deed, all without affecting the security interest created by this Deed; and any balance of such moneys then remaining shall be paid to Borrower or the person or entity lawfully entitled thereto. Notwithstanding the foregoing, Lender shall elect to apply the net proceeds to repair and/or restoration of the Premises in accordance with the foregoing clause (ii) if all of the following requirements are satisfied: (A) no Event of Default has occurred and is continuing; (B) Lender reasonably determines that restoration to a condition substantially the same or better than that which existed prior to the casualty can be completed within nine (9) months after the date of loss or casualty and in any event ninety (90) days prior to the Maturity Date; (C) Lender determines in its reasonable discretion that the cost to complete such repair and/or restoration does not exceed $1,000,000.00; (D) Borrower deposits with Lender such additional funds beyond the net proceeds which Lender reasonably determine are needed to pay all costs of the repair or restoration (including, without limitation, taxes, financing charges and insurance during the repair period), if any; (E) Borrower establishes with Lender an arrangement for lien releases and disbursement of funds reasonably acceptable to Lender; (F) Borrower delivers to Lender plans and specification for the work, a contract for the work signed by a contractor reasonably acceptable to Lender, a cost breakdown for the work and a payment and performance bond for the work, all of which shall be reasonably acceptable to Lender; and (G) Borrower delivers to Lender evidence reasonably acceptable to Lender that upon completion of the work (1) the income from the Premises will be sufficient to pay all expenses and debt service from the Premises or that Borrower has sufficient resources to cover any shortfall during a reasonable lease-up period for the restored units; and (2) the size, capacity and total value of the Premises will be at least as great as it was before the damage occurred. Lender shall not be held responsible for any failure to collect any insurance proceeds due under the terms of any policy. The provisions of this paragraph apply only to casualty insurance and not to liability insurance.

(c) At least thirty (30) days prior to the expiration date of each policy maintained pursuant to this Paragraph 1.03, a renewal or replacement thereof satisfactory to Lender shall be delivered to Lender. Borrower shall deliver to Lender receipts evidencing the payment for all such insurance policies and renewals or replacements. The delivery of any insurance policies hereunder shall constitute an assignment of all unearned premiums as further security hereunder. In the event of the foreclosure of this Deed or any other transfer of title to the Premises in extinguishment or partial extinguishment of the Secured Indebtedness, all right, title and interest of Borrower in and to all insurance policies then in force shall pass to the purchaser or to Lender, as the case may be, and Lender is hereby irrevocably appointed by Borrower as attorney-in-fact for Borrower to assign any such policy to said purchaser or to Lender, as the case may be, without accounting to Borrower for any unearned premiums thereon.

(d) In the event of a foreclosure of this Deed, the purchaser of the Premises shall succeed to all rights of Borrower, including any right to unearned premiums, in and to all policies of insurance assigned and delivered to Lender, with respect to all property encumbered by this Deed.

1.04 **Monthly Deposits**. If at any time during the term of the Loan, an Event of Default occurs in any one (1) instance, and even if such Event of Default is subsequently cured, at any time thereafter, at the option of Lender and further to secure the payment of the taxes and assessments referred to in Paragraph 1.02 and the premiums on the insurance referred to in Paragraph 1.03, Borrower shall deposit with Lender, on the due date of each installment under the Note, such amounts as, in the estimation of Lender, shall be necessary to pay such charges as they become due; said deposits to be held by Lender, free of interest, and free of any

liens or claims on the part of creditors of Borrower and as part of the security of Lender, and to be used by Lender to pay current taxes and assessments and insurance premiums on the Premises as the same accrue and are payable. As long as no Event of Default exists, Lender will make payment from said sums for said purposes and such payment may be made even though such payments will benefit subsequent owner of the Premises. If said deposits are insufficient to pay the taxes and assessments and insurance premiums in full as the same become payable, Borrower will deposit with Lender such additional sum or sums as may be required in order for Lender to pay such taxes and assessments and insurance premiums in full. While an Event of Default exists, Lender may, at its option, apply any money in the fund resulting form said deposits to the payment o the Secured Indebtedness in such manner as it may elect. Upon payment in full of the Secured Indebtedness, the amount of any unused credit shall be paid over to the person entitled to receive it. In no event shall Lender be liable for any interest on any amount paid to it as herein require, and the money so received may be held and commingled with its own funds, pending payment or application thereof as herein provided. In the event Lender has required Borrower to pay to Lender amounts estimated to be necessary to pay said taxes, assessments, insurance premiums and the like as provided hereinabove, the Borrower shall furnish Lender, at least thirty (30 days before the date on which the same will become past due, an official statement of the amount of said taxes, assessments, insurance premiums, and rents next due, and Lender shall pay said charges up to the amount of the then unused credit therefor as and when they become severally due and payable. An official receipt thereof shall be conclusive evidence of such payment and of the validity of such charges. Lender may, at its option, pay any of these charges when payable, either before or after they become due, without notice, or make advances therefor in excess of the then amount of credit for said charges. The excess amount advanced shall become a debt due by Borrower to Lender, shall bear interest at the rate of interest specified in the Note from the date of advancement, and shall be immediately due and payable to Lender upon demand by Lender. Lender may apply credits held by it for the above charges, or any part thereof, on account of any delinquent installments of principal or interest or any other payments maturing or due under this instrument, and the amount of credit existing at any time shall be reduced by the amount thereof paid or applied as herein provided. The amount of the existing credit hereunder at the time of any transfer of the Premises shall, without assignment thereof, inure to the benefit of the successor-owner of the Premises and shall be applied under an subject to all of the provisions hereof.

1.05 Condemnation. If all or any material portion of the Premises shall be damaged or taken through condemnation (which term when used in this Deed shall include any damage or taking by any governmental or quasi-governmental authority and any transfer by private sale in lieu thereof), or if any portion of the Premises shall be damaged or taken through condemnation so that the value or operation of the remaining portion of the Premises shall, in the reasonable judgment of Lender, be materially diminished or impeded, then the entire Secured Indebtedness shall at the option of Lender, immediately become due and payable. Borrower, immediately upon obtaining knowledge of the institution, or the proposed, contemplated or threatened institution, of any action or proceeding for the taking through condemnation of the Premises or any part thereof, will notify Lender, and Lender is hereby authorized, at its option, to commence, appear in and prosecute, through counsel selected by Lender, in its own or in Borrower_s name, any action or proceeding relating to any condemnation, and jointly with Borrower to settle or compromise any claim in connection therewith. All such compensation, awards, damages, claims, rights of action and proceeds and the right thereto are hereby assigned by Borrower to Lender. After deducting from said condemnation proceeds all of its expenses incurred in the collection and administration of such sums, including reasonable attorney's fees actually incurred at prevailing hourly rates, Lender may apply the net proceeds or any part thereof, at its option, (i) to the payment of the Secured Indebtedness, whether or not due and in whatever order Lender elects, (ii) to the repair and/or restoration of the Premises, or (iii) for any other purposes or objects for which Lender is entitled to advance funds under this Deed, all without affecting the security interest created by this Deed, and any balance of such moneys then remaining shall be paid to Borrower or any other person or entity lawfully entitled thereto. Notwithstanding the foregoing, in the event Lender has not elected (or is not entitled) to accelerate the entire Secured Indebtedness in accordance with the foregoing provision of this paragraph, Lender shall elect to apply the net condemnation proceeds to repair and/or restoration of the Premises in accordance with the foregoing clause (ii) if all the requirements set forth in clauses (A) through (G) of Section 1.03(b) are satisfied. Borrower agrees to execute such further assignments of any compensation, awards, damages, claims, rights of action and proceeds as Lender may

require. If, prior to the receipt by Lender of such award or proceeds, the Premises shall have been sold on foreclosure of this Deed, or under the power of sale herein granted, Lender shall have the right to receive such award or proceeds to the extent of any unpaid Secured Indebtedness following such sale, with legal interest thereon, whether or not a deficiency judgment on this Deed or the Note shall have been sought or recovered, and to the extent of reasonable counsel fees, costs and disbursements incurred by Lender in connection with the collection of such award or proceeds.

**1.06 Care of Premises.**

(a) Borrower will keep the buildings, parking areas, roads and walkways, recreational facilities, landscaping and all other improvements of any kind now or hereafter erected on the Land or any part thereof in good condition and repair, will not commit or suffer any waste and will not do or suffer to be done anything which would or could increase the risk of fire or other hazard to the Premises or any other part thereof or which would or could result in the cancellation of any insurance policy carried with respect to the Premises. Borrower will manage the Premises or cause the Premises to be managed in a professional manner.

(b) Except as otherwise expressly permitted in the Loan Agreement, no part of the Premises, including, but not limited to, any building, structure, parking lot, driveway, landscape scheme, timber or other ground improvement, equipment or other property, now or hereafter subjected to the lien of or security interest under this Deed, shall be removed, demolished, or materially altered without the prior written consent of Lender, except for the replacement of obsolete or worn our assets in the normal course of Borrower's business with items of equal value to the original.

(c) If the Premises or any part thereof is damaged by fire or other cause, Borrower will give immediate written notice thereof to Lender.

(d) Lender or its representative is hereby authorized to enter upon and inspect the Premises at any time during normal business hours.

(h) Borrower will promptly comply with, and will furnish Lender evidence of such compliance in form satisfactory to Lender, all present and future laws, ordinances, rules and regulations of any governmental authority affecting the Premises or any part thereof.

(i) If all or any part of the improvements on the Premises shall be damaged by fire or other casualty, Borrower will promptly restore the Premises to the equivalent of its original condition or to such other condition contemplated by the Loan Agreement; and if a part of the Premises shall be damaged through condemnation, Borrower will promptly restore, repair or alter the remaining portions of the Premises in a manner necessary to allow for the continued operation of the Premises.

(j) Borrower shall not initiate, join in, or consent to any change in any private restrictive covenant, zoning ordinance, or other public or private restrictions limiting or determing the uses which may be made of the Premises or any part thereof without the express prior written consent of Lender.

**1.07 Leases, Contracts, Etc.**

(a) As additional collateral and further security for the Secured Indebtedness, Borrower does hereby assign to Lender Borrower's interest in any and all leases, franchise agreements, management contracts, construction contracts, and other contracts, licenses and permits now or hereafter affecting the Premises or any part thereof, and Borrower agrees to execute and deliver to Lender such additional instruments, in form and substance satisfactory to Lender, as may hereafter be requested by Lender further to evidence and confirm said assignment; provided, however, that acceptance of any such assignment shall not be construed as a consent by Lender to any lease, franchise agreement, management contract, construction contract, or other contract, license or

permit, or to impose upon Lender any obligation with respect thereto unless and until Lender shall take possession of the Premises or a receiver is appointed therefor. Except as allowed pursuant to the terms of the Loan Agreement, without first obtaining on each occasion the written approval of Lender, Borrower shall not cancel or permit the cancellation of any such lease, franchise agreement, management contract, construction contract, or other contract, license or permit, or modify any of said instruments, or accept or permit to be made, any prepayment of any charges or fees thereunder. Borrower shall faithfully keep and perform, or cause to be kept and performed, all of the covenants, conditions and agreement contained in each of said instruments, now or hereafter existing, on the part of Borrower to be kept and performed and shall at all times do all things necessary to compel performance by each other party to said instruments of all obligations, covenants and agreements by such other party to be performed thereunder.

(b) Borrower shall not execute an assignment of the income, rents, issues or profits, or any part thereof, from the Premises unless Lender shall first consent to such assignment and unless such assignment shall expressly provide that it is subordinate to the assignment contained in this Deed and any assignment executed pursuant hereto or concerning the Secured Indebtedness.

(c) Borrower shall furnish to Lender, within ten (10) days after a written request by Lender to do so, a sworn statement setting forth the names of all lessees and tenants of the Premises, the terms of their respective leases, tenant contracts or rental agreements, the space occupied, and the rentals payable thereunder, and stating whether any defaults, off-sets or defenses exist under or in connection with any of said leases, tenant contracts or rental agreements.

(d) Notwithstanding any other provisions of this Deed, Borrower shall not hereafter enter into any lease, tenant contract, rental agreement, franchise agreement, or management contract, construction contract or contract of sale affecting the Premises, or any part thereof, without the prior written consent of Lender and except upon the following conditions; (i) each such instrument shall contain a provision that the rights of the parties thereunder are expressly subordinate to all of the rights and title of Lender under this Deed; (ii) any such instrument shall contain a provision whereby the parties thereunder expressly recognize and agree that, notwithstanding such subordination, Lender may sell the Premises in the manner provided in this Deed, and thereby, at the option of the Lender, sell the same subject to such instrument; and (iii) at or prior to the time or execution of any such instrument, Borrower shall, as a condition to such execution, procure from the other party or parties thereto an agreement in favor of Lender, in form and substance reasonably satisfactory to Lender, under which such party or parties agree to be bound by the provisions hereof, regarding the manner in which Lender may foreclose or exercise the power of sale under this Deed.

**1.08** **Security Agreement**. With respect to the machinery, apparatus, equipment, fittings, fixtures, building supplies and materials, articles of personal property, and general intangibles, if any, referred to or described in this Deed, this Deed is hereby made and declared to be a security agreement encumbering each and every item of such property included herein as a part of the Premises, in compliance with the provisions of the Uniform Commercial Code as enacted in the State of Georgia (the "Uniform Commercial Code"). The remedies for any violation of the covenants, terms and conditions of the security agreement contained in this Deed shall be (i) as prescribed herein, or (ii) as prescribed by general law, or (iii) as prescribed by the specific statutory consequences now or hereafter enacted and specified in said Uniform Commercial Code, all at Lender's sole election. Borrower hereby authorizes Lender to prepare and file such financing statements and such further assurances as Lender may, from time to time, reasonably consider necessary to create, perfect and preserve Lender's security interest herein granted, and Lender may cause such statements and assurances to be recorded and filed, at such times and places as may be required or permitted by law to so create, perfect and preserve such security interest.

***Borrower and Lender agree that with respect to all items of personal property which are or will become fixtures on the Land, this Deed, upon recording in the real estate records of the Clerk of Superior Court of the county in which the Land is located, shall constitute a financing statement filed as a fixture filing within the meaning of the Uniform Commercial Code. The following information is provided in order***

***that this Deed shall comply with the requirements of the Uniform Commercial Code for deeds to secure debt or mortgages to be effective as financing statements filed as a fixture filing: The name of the "Debtor" is David M. Cunningham and the address of the Debtor is 77 12th Street, NE, Unit 1715, Atlanta, GA 30309. The name of the "Secured Party" is and the address of the Secured Party is , . The collateral covered hereby is that portion of the Premises that now or hereafter constitutes fixtures. Such fixtures are related to the real property described on Exhibit A attached to this Deed and the Debtor is the record owner of such real property.***

Borrower agrees to furnish Lender with notice of any change in the name, identity, organizational structure, residence, state of incorporation, state of organization or state of formation or principal place of business or mailing address of Borrower at least thirty (30) days prior to the effective date of any such change.

**1.09** **Further Assurances; After-Acquired Property.** At any time, and from time to time, upon request by Lender, Borrower will make, execute and deliver, or cause to be made, executed and delivered, to Lender and, where appropriate, cause to be recorded and/or filed and from time to time thereafter to be re-recorded and/or filed at such time and in such offices and places as shall be deemed desirable by Lender, any and all such other and further deeds to secure debt, security agreements, financing statements, continuation statements, instruments of further assurance, certificates and other documents as may in, the opinion of Lender, be necessary or desirable in order to effectuate, complete or perfect, or to continue and preserve (i) the obligation of Borrower under the Note and under this Deed and (ii) the security interest created by this Deed as a first and prior security interest (subject only to the Permitted Encumbrances) upon and security title in and to all of the Premises, whether now owned or hereafter acquired by Borrower. Upon any failure by Borrower so to do, Lender may make, execute, record, file, re-record and/or refile any and all such deeds to secure debt, security agreements, financing statements, continuation statements, instruments, certificates and documents for and in the name of Borrower, and Borrower hereby irrevocably appoints Lender the agent and attorney-in-fact of Borrower so to do. The security title of this Deed and the security interest created hereby will automatically attach, without further act, to all after-acquired property attached to and/or used in the operation of the Premises or any part thereof.

**1.10** **Expenses.** Borrower will pay or reimburse Lender, upon demand therefore, for all reasonable attorney's fees actually incurred at prevailing hourly rates, costs and expenses incurred by Lender in any suit, action, legal proceeding or dispute of any kind in which Lender is made a party or appears as party plaintiff or defendant, affecting the Secured Indebtedness, this Deed or the interest created herein, or the Premises, including, but not limited to, the exercise of the power of sale contained in this Deed, any condemnation action involving the Premises or any action to protect the security hereof, and any such amounts paid by Lender shall be added to the Secured Indebtedness and shall be secured by this Deed.

**1.11** **Estoppel Affidavits.** Borrower, upon ten (10) days prior written notice, shall furnish Lender a written statement, duly acknowledged, setting forth the unpaid principal of, and interest on, the Secured Indebtedness, stating whether or not any offsets or defenses exist against the Secured Indebtedness, or any portion thereof, and, if such offsets or defenses exist, stating in detail the specific facts relating to each such offset or defense.

**1.12** **Subrogation.** To the full extent of the Secured Indebtedness, Lender is hereby subrogated to the liens, claims and demands, and to the rights of the owners and holders of each and every lien, claim, demand and other encumbrance on the Premises which is paid or satisfied, in whole or in part, out of the proceeds of the Secured Indebtedness, and the respective liens, claims, demands and other encumbrances shall be, and each of them is hereby, preserved and shall pass to and be held by Lender as additional collateral and further security for the Secured Indebtedness, to the same extend they would have been preserved and would have been passed to and held by Lender had they been duly and legally assigned, transferred, set over and delivered unto Lender by assignment, notwithstanding the fact that any instrument providing public notice of the same may be satisfied and canceled of record.

**1.13** **Books, Records, Accounts and Annual Reports.** Borrower shall comply with the provisions of Section 4.1 of the Loan Agreement.

**1.14** Limit of Validity. If from any circumstances whatsoever, fulfillment of any provisions of this Deed or of this Note, at the time performance of such provision shall be due, shall involve transcending the limit of validity presently prescribed by any applicable usury statute or any other applicable law, with regard to obligations of like character and amount, then ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, so that in no event shall any exaction be possible under this Deed or under the Note that is in excess of the current limit of such validity, but such obligation shall be fulfilled to the limit of such validity. The provisions of this Paragraph shall control every other provision of this Deed and of the Note.

**1.15** No Default Affidavits. At Lender's request, all payments made under the Note or hereunder shall be accompanied by the affidavit of Borrower or a principal financial or accounting officer of Borrower, dated within five (5) days of the delivery of such payment to Lender, swearing that he knows of no Default (as hereinafter defined), nor of any circumstances which after notice or lapse of time or both would constitute a Default, which has occurred and is continuing, specifying the nature and period of existence thereof and the action Borrower has taken or proposes to take with respect thereto and, except as otherwise specified, stating that Borrower has fulfilled all of Borrower_s obligations under this Deed which are required to be fulfilled on or prior to the date of such affidavits.

**1.16** Conveyance of or Additional Encumbrance on Premises. Borrower hereby acknowledges to Lender that (a) the identify and expertise of Borrower were and continue to be material circumstances upon which Lender has relied in connection with, and which constitute valuable consideration to Lender for, the extending to Borrower of the indebtedness evidenced by the Note, and (b) any change in such identity or expertise could materially impair or jeopardize the security for the payment of the Note granted to Lender by this Deed. Borrower therefore covenants and agrees with Lender, as part of the consideration for the extending to Borrower of the indebtedness evidenced by the Note, that, unless the prior written consent and approval of Lender shall have been obtained, (i) Borrower shall not (x) further encumber or pledge the Premises or any portion thereof or interest therein, or (y) grant, convey, sell, transfer or assign the Premises or any portion thereof or interest therein, or (z) lease any portion of the Premises; and (ii) if Borrower or any general partner of Borrower is a corporation, partnership, limited liability company or other such entity, there shall be no encumbrance, pledge, sale, conveyance, transfer or assignment of any legal or beneficial interest whatsoever in Borrower or such general partner; and (iii) if Borrower is a partnership, there shall be no transfer of the interest of any general partner of Borrower or change in the identity of any general partner of Borrower. The consent or approval of Lender to any transaction or event described in this Paragraph may be given or withheld by Lender at its sole discretion.

**1.17** Acquisition of Collateral. Borrower shall not acquire any portion of the personal property covered by this Deed subject to any security interest, conditional sales contract, title retention arrangement or other charge or lien taking precedence over the security title and lien of this Deed.

**1.18** Hazardous Materials. Borrower shall fulfill each agreement and requirement of that certain Agreement Regarding Hazardous Materials. The Agreement Regarding Hazardous Materials is incorporated herein and made a part hereof as if typed in its entirety in this Deed.

## ARTICLE II

**2.01** Default. The terms "Event of Default" or "Events of Default" or "Defaults", wherever used in this Deed, shall mean any one or more of the following events:

(a) Borrower fails to pay when due any payment required to be paid under the terms of the Note within ten (10) days of the date that any such payment shall be due and payable; or

(b) Borrower shall breach or fail to perform, observe or meet any covenant, condition or agreement made in any Loan Document, including but not limited to the Note, this Deed, the Loan Agreement, or any other any other instrument which evidences, secures or relates to this Loan and

such breach shall continue beyond any applicable grace period; or the occurrence of any "Default" or "Event of Default" defined in any of the Loan Documents; or

(c) Any Guarantor shall fail to comply with any of the obligations under the Guaranty to which he, she or it is a party or attempts to terminate or repudiate any Guaranty, or any Guaranty shall be declared unenforceable or any Guaranty shall no longer be in full force and effect; or

(d) At any time any representation, warranty or statement made by Borrower or any Guarantor in any of the Loan Documents shall be incorrect or misleading in any material respect; or

(e) The filing by Borrower or any endorser or guarantor of the Note of a voluntary petition in bankruptcy or the filing by Borrower or any such endorser or guarantor of any petition or answer seeking or acquiescing in any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief for itself under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency or other relief for debtors, or Borrower's or any such endorser's or guarantor's seeking or consenting to or acquiescing in the appointment of any trustee, receiver or liquidator of Borrower, such endorser or guarantor, or any general assignment for the benefit of creditors, or the admission in writing by Borrower, or any such endorser or guarantor, of its inability to pay its debts generally as they become due or the commission by Borrower or any such endorser or guarantor of an act of bankruptcy; or

(f) The filing of a petition against Borrower, or any endorser or guarantor of the Note, seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any present or future federal, state or other law or regulation relating to bankruptcy, insolvency or other relief for debtors, or the appointment of any trustee, receiver or liquidator of Borrower, or of any such endorser or guarantor or of all of any substantial part of the Premises or of any or all of the income, rents, issues, profits, or revenues thereof unless such petition shall be dismissed within sixty (60) days after such filing, but in any event prior to the entry of an order, judgment or decree approving such petition; or

(g) Borrower or any endorser or guarantor of the Note (if a corporation or a limited liability company) is liquidated or dissolved or its charter expires or is revoked, or Borrower or such endorser or guarantor (if a partnership or business association) is dissolved or partitioned, or Borrower or such endorser or guarantor (if a trust) is terminated or expires; or

(h) Borrower violates Section 1.16 (Conveyance or Additional Encumbrance on Premises) of this Deed; or

(i) Borrower violates Section 1.18 (Hazardous Materials) of this Deed and such violation continues beyond the expiration of any notice and cure period set forth therein; or

(j) Should the Premises by subject to actual waste, or any part thereof be removed, demolished, or materially adversely altered so that the value of the Premises is materially diminished, except as permitted under Section 1.06 of this Deed; or

(k) Should any federal tax lien or claim of lien for labor or material be filed of record against Borrower or against the Premises and not be removed by payment or bond within thirty (30) days from the date of recording; or

(l) Should a third party assert the priority of a lien, security interest, or deed to secure debt over that of the Security Instrument; or

(m) Should any third party accelerate any debt owed by Borrower to such third party, the acceleration of which would materially adversely affect Borrower's ability to pay when due any amounts owed to Lender; or

(n) Any change of an adverse nature shall occur in the financial status of Borrower or any Guarantor, or any of them, from that reported and delivered to Lender heretofore which, in Lender's reasonable opinion, would materially impair the ability of Borrower or any Guarantor to comply with all their obligations hereunder and under the terms and conditions of the Loan Documents; or

(o) Any default or event of default shall occur under any instrument which evidences, secures or relates to any other loan or indebtedness owed by Borrower to Lender.

**2.02** **Acceleration of Maturity.** If a Default shall occur, then the entire Secured Indebtedness shall, at the option of Lender, immediately become due and payable without notice or demand, time being of the essence of this Deed; and no omission on the part of Lender to exercise such option when entitled to do so shall be construed as a waiver of such right.

**2.03** **Right to Enter and Take Possession.**

(a) If a Default shall have occurred, Borrower, upon demand of Lender, shall forthwith surrender to Lender the actual possession of the Premises and if, and to the extent, permitted by law, Lender itself, or by such officers or agents as it may appoint, may enter and take possession of all of the Premises without the appointment of a receiver, or an application therefore, and may exclude Borrower and its agents and employees wholly therefrom, and may have joint access with Borrower to the books, papers and accounts of Borrower.

(b) If Borrower shall for any reason fail to surrender or deliver the Premises or any part thereof after such demand by Lender, Lender may obtain a judgment or decree conferring upon Lender the right to immediate possession or requiring Borrower to deliver immediate possession of the Premises to Lender, and Borrower hereby specifically covenants and agrees that Borrower will not oppose, contest or otherwise hinder or delay Lender in any action or proceeding by Lender to obtain such judgment or decree. Borrower will pay to Lender, upon demand, all expenses of obtaining such judgment or decree, including reasonable compensation to Lender, its attorneys and agents, and all such expenses and compensation shall, until paid, become part of the Secured Indebtedness and shall be secured by this Deed.

(c) Upon every such entering upon or taking of possession, Lender may hold, store, use, operate, manage and control the Premises and conduct the business thereof, and, from time to time (i) make all necessary and proper maintenance, repairs, renewals, replacements, additions, betterments and improvements thereto and thereon and complete any incomplete construction and purchase or otherwise acquire additional fixtures, personalty and other property; (ii) insure or keep the Premises insured; (iii) manage and operate the Premises and exercise all the rights and powers of Borrower to the same extent as Borrower could in its own name or otherwise act with respect to the same; and (iv) enter into any and all agreements with respect to the exercise by others of any of the powers herein granted to Lender, all as Lender from time to time may determine to be in its best interest. Lender may collect and receive all the income, rents, issues, profits and revenues from the Premises, including those past due as well as those accruing thereafter, and Lender may apply any moneys and proceeds received by Lender, in whatever order or priority Lender in its sole discretion may determine, to the payment of (i) all expenses of taking, holding, managing and operating the Premises (including compensation for the services of all persons employed for such purposes); (ii) the cost of such maintenance, repairs, renewals, replacements, additions, betterments, improvements, purchases and acquisitions; (iii) the cost of such insurance; (iv) such taxes, assessments and other similar charges as Lender may at its option pay; (v) other proper charges upon the Premises or any part thereof; (vi) the reasonable compensation, expenses and disbursements of the attorneys and agents of Lender; (vii) accrued interest; (viii) deposits required to be paid under this Deed; or (ix) overdue installments of principal. Anything in this Paragraph 2.03 to the contrary notwithstanding, Lender shall not be obligated to discharge or perform the

duties of a landlord to any tenant or incur any liability as the result of any exercise by Lender of its rights under this Deed, and Lender shall be liable to account only for the rents, incomes, issues, profits and revenues actually received by Lender.

(d) In the event that all such interest, deposits and principal installments and other sums due under any of the terms, covenants, conditions and agreements of this Deed shall be paid and all Defaults shall be cured, and as a result thereof Lender surrenders possession of the Premises to Borrower, the same right of taking possession shall continue to exist if any subsequent Default shall occur.

2.04 **Performance by Lender.** If Borrower shall fail to pay, perform or observe any term, covenant or condition of this Deed after applicable notice and cure periods, Lender may, at its option, pay, perform or observe the same, and all payments made or costs or expenses incurred by Lender in connection therewith shall be secured hereby and shall be, without demand, immediately repaid by Borrower to Lender with interest thereon at the rate of Default Interest provided in the Note. Lender shall be the sole judge of the necessity for any such actions and of the amounts to be paid. Lender is hereby empowered to enter and to authorize others to enter upon the Premises or any part thereof for the purpose of performing or observing any such defaulted term, covenant or condition without thereby becoming liable to Borrower or any person in possession holding under Borrower.

2.05 **Receiver.** If a Default shall have occurred, Lender, upon application to a court of competent jurisdiction, shall be entitled as a matter of strict right, without notice and without regard to the adequacy or value of any security for the Secured Indebtedness or the solvency of any party bound for its payment, to the appointment of a receiver to take possession of and to operate the Premises and to collect and apply the incomes, rents, issues, profits and revenues thereof. The receiver shall have all of the rights and powers permitted under the laws of the State of Georgia. Borrower will pay to Lender upon demand all expenses, including receiver's fees, reasonable attorney's fees actually incurred at prevailing hourly rates, costs and agent's compensation, incurred pursuant to the provisions of this Paragraph 2.05, and any such amounts paid by Lender shall be added to the Secured Indebtedness and shall be secured by this Deed.

2.06 **Enforcement.**

(a) If a Default shall have occurred, Lender, at its option, may sell the Premises or any part of the Premises at one or more public sale or sales before the door of the courthouse of the county in which the Land or any part of the Land is situated, to the highest bidder for cash, in order to pay the Secured Indebtedness and all expenses of sale and of all proceedings in connection therewith including reasonable attorney's fees, after advertising the time, place and terms of sale once a week for four (4) weeks immediately preceding such sale (but without regard to the number of days) in a newspaper in which Sheriff's sales are advertised in said county. At or after any such public sale, Lender may execute and deliver to the purchaser a conveyance of the Premises or any part of the Premises in fee simple, with full warranties of title and to this end, Borrower hereby constitutes and appoints Lender the agent and attorney-in-fact of Borrower to make such sale and conveyance, and thereby to divest Borrower of all right, title and equity that Borrower may have in and to the Premises and to vest the same in the purchaser or purchasers at such sale or sales, and all the acts and doings of said agent and attorney-in-fact are hereby ratified and confirmed and any recitals in said conveyance or conveyances as to facts essential to a valid sale shall be binding upon Borrower. The aforesaid power of sale and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, are granted as cumulative of the other remedies provided hereby or by law for collection of the Secured Indebtedness and shall not be exhausted by one exercise thereof but may be exercised until full payment of all of the Secured Indebtedness. In the event of any sale under this Deed by virtue of the exercise of the powers herein granted, or pursuant to any order in any judicial proceeding or otherwise, the Premises may be sold as an entirety or in separate parcels and in such manner or order as Lender in its sole discretion may elect, and if Lender so elects, Lender may sell the personal property covered by this Deed at one or more separate sales in any manner permitted by the Uniform Commercial Code of the State of Georgia, and one or more exercises of the powers herein granted shall not extinguish nor exhaust

such powers, until the entire Premises are sold or the Secured Indebtedness is paid in full. If the Secured Indebtedness is now or hereafter further secured by any chattel mortgages, pledges, contracts of guaranty, assignments of leases or other security instruments, Lender may at its option exhaust the remedies granted under any of said security instruments either concurrently or independently, and in such order as Lender may determine.

(b) If a Default shall have occurred, Lender, may in addition to and not in abrogation of the rights covered under Paragraph 2.06(a), either with or without entry or taking possession as herein provided or otherwise, proceed by a suit or suits in law or in equity or by any other appropriate proceeding or remedy (i) to enforce payment of the Note and/or the other Loan Documents, or the performance of any term, covenant, conditions or agreement of this Deed or any other right and (ii) to pursue any other remedy available to it, all as Lender at its sole discretion shall elect.

(c) Lender shall have all powers, rights and remedies under applicable law whether or not specifically or generally granted or described in this Deed. Nothing contained herein shall be construed to impair or to restrict such powers, rights and remedies or preclude any procedures or process otherwise available to holders of deeds to secure debt in the State of Georgia. Lender shall be entitled to enforce the payment and performance of the Secured Indebtedness and to exercise all rights and powers under this Deed or under the Note or any other agreement or any laws now or hereafter in force, notwithstanding the fact that some or all of the Secured Indebtedness may now or hereafter be otherwise secured, whether by deed to secure debt, pledge, lien, assignment or otherwise. Neither the acceptance of this Deed nor its enforcement, whether by court action or other powers contained herein, shall prejudice or in any mater affect Lender's right to realize upon or enforce any other rights or security now or hereafter held by Lender. Lender shall benefit to enforce this Deed and any other rights or security nor or hereafter held by Lender in such order and manner as it may in its absolute discretion determine. No remedy herein conferred upon or reserved to Lender is intended to be exclusive of any other remedy contained herein or by law provided or permitted, but each shall to the extent permitted by law be cumulative and in addition to every other remedy given hereunder or now or hereafter existing at law or in equity. Every power or remedy given by any of the foregoing to Lender, or to which Lender may be otherwise entitle, may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by Lender, and it may pursue inconsistent remedies.

(d) Borrower waives any and all rights to file or pursue permissive counterclaims in connection with any legal action brought by Lender under this Deed, the Note, the Loan Agreement or any other instrument now or hereafter evidencing, securing or otherwise relating to the Secured Indebtedness.

**2.07** **<u>Purchase by Lender</u>**. Upon any foreclosure sale or sales of all or any portion of the Premises under the power herein granted, Lender may bid for and purchase the Premises and shall be entitled to apply all or any part of the Secured Indebtedness as a credit to the purchase price.

**2.08** **<u>Application of Proceeds of Sale</u>**. In the event of a foreclosure or a sale of all or any portion of the Premises under the power herein granted, the proceeds of said sale shall be applied, in whatever order Lender in its sole discretion may decide, to the expenses of such sale and of all proceedings in connection therewith, including attorneys fees in the amount set forth in the Note, to insurance premiums, liens, assessments, taxes and charges including utility charges advanced by Lender, to payment of the outstanding principal balance of the Secured Indebtedness, or to the accrued interest on all of the foregoing; and the remainder, if any, shall be paid to Borrower, or to the person or entity lawfully entitled thereto.

**2.09** **<u>Borrower as Tenant Holding Over</u>**. In the event of any such foreclosure sale or sales under the power herein granted, Borrower shall be deemed a tenant holding over and shall forthwith deliver possession to the purchaser or purchasers at such sale or be summarily dispossessed according to provisions of law applicable to tenants holding over.

2.10 **Waiver of Appraisement, Valuation, etc.** Borrower agrees, to the full extent permitted by law, that in case of a Default hereunder, neither Borrower nor anyone claiming through or under Borrower will set up, claim or seek to take advantage of any moratorium, reinstatement, forbearance, appraisement, valuation, stay, extension, homestead, exemption or redemption laws now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Deed, or the absolute sale of the Premises, or the delivery of possession thereof immediately after such sale to the purchaser at such sale, and Borrower, for itself and all who may at any time claim through or under it, hereby waives to the full extent that it may lawfully so do, the benefit of all such laws, and any and all right to have the assets subject to the security interest of this Deed marshaled upon any foreclosure or sale under the power herein granted.

2.11 **Waiver of Homestead.** Borrower hereby waives and renounces all homestead and exemption rights provided for by the Constitution and the laws of the United States and of any state, in and to the Premises as against the collection of the Secured Indebtedness, or any part thereof.

2.12 **Leases.** Lender, at its option, is authorized to foreclose this Deed subject to the right of any tenants of the Premises, and the failure to make any such tenants parties to any such foreclosure proceedings and to foreclose their rights will not be, nor be asserted to be by Borrower, a defense to any proceedings instituted by Lender to collect the Secured Indebtedness.

2.13 **Discontinuance of Proceedings.** In case Lender shall have proceeded to enforce any right, power or remedy under this Deed by foreclosure, entry or otherwise, or in the event Lender commences advertising of the intended exercise of the sale under power provided hereunder, and such proceeding or advertisement shall have been withdrawn, discontinued or abandoned for any reason, or shall have been determined adversely to Lender, then in every such case, (i) all rights, powers and remedies of Lender shall continue as if no such proceeding had been taken, (ii) each and every Default declared or occurring prior to or subsequent to such withdrawal, discontinuance or abandonment shall and shall be deemed to be a continuing Default, and (iii) neither this Deed, nor the Note, nor the Secured Indebtedness, nor any other instrument concerned therewith, shall be or shall be deemed to have been reinstated or otherwise affected by such withdrawal, discontinuance or abandonment; and Borrower hereby expressly waives the benefit of any statute or rule of law now provided, or which may hereafter be provided, which would produce a result contrary to or in conflict with the above.

2.14 **Remedies Cumulative.** No right, power or remedy conferred upon or reserved to Lender by this Deed is intended to be exclusive of any other right, power or remedy, but each and every such right, power and remedy shall be cumulative and concurrent and shall be in addition to any other right, power and remedy given hereunder or now or hereafter existing at law, in equity or by statute.

2.15 **Waiver.**

(a) No delay or omission by Lender or by any holder of the Note to exercise any right, power or remedy accruing upon any breach or Default shall exhaust or impair any such right, power or remedy or shall be construed to be a waiver of any such breach or default, or acquiescence therein, and every right, power and remedy given by this Deed to Lender may be exercised from time to time and as often as may be deemed expedient by Lender. No consent or waiver, expressed or implied, by Lender to or of any breach or Default by Borrower in the performance of the obligations of Borrower hereunder shall be deemed or construed to be a consent or waiver to or of any other breach or Default in the performance of the same or any other obligations of Borrower hereunder. Failure on the part of Lender to complain of any act or failure to act or to declare a Default, irrespective of how long such failure continues, shall not constitute a waiver by Lender of its rights hereunder or impair any rights, powers or remedies of Lender hereunder.

(b) No act or omission by Lender shall release, discharge, modify, change or otherwise affect the original liability under the Note, this Deed or any other obligation of Borrower or any subsequent purchaser of the Premises or any part thereof, or any maker, co-signer, endorser, surety or guarantor, or preclude Lender from exercising any right, power or privilege herein granted or

intended to be granted in the event of any Default then made or of any subsequent Default, or alter the security title, security interest or lien of this Deed except as expressly provided in an instrument or instruments executed by Lender. Without limiting the generality of the foregoing, Lender may (i) grant forbearance or an extension of time for the payment of all or any portion of the Secured Indebtedness; (ii) take other or additional security for the payment of the Secured Indebtedness; (iii) waive or fail to exercise any right granted hereunder or in the Note; (iv) release any part of the Premises from the security interest or lien of this Deed or otherwise change any of the terms, covenants, conditions or agreements of the Note or this Deed; (v) consent to the filing of any map, plat or replat affecting the Premises, (vi) consent to the granting of any easement or other right affecting the Premises; (vii) make or consent to any agreement subordinating the security title, security interest or lien hereof; or (viii) take or omit to take any action whatsoever with respect to the Note, this Deed, the Premises or any document or instrument evidencing, securing or in any way related to the Secured Indebtedness; all without releasing, discharging, modifying, changing or affecting any such liability, or precluding Lender from exercising any such right, power or privilege or affecting the security title, security interest or lien of this Deed. In the event of the sale or transfer by operation of law or otherwise of all or any part of the Premises, Lender, without notice, is hereby authorized and empowered to deal with any such vendee or transferee with reference to the Premises or the Secured Indebtedness, or with reference to any of the terms, covenants, conditions or agreements hereof, as fully and to the same extent as it might deal with the original parties hereto and without in any way releasing and/or discharging any liabilities, obligations or undertakings; provided that the foregoing provisions of this sentence are not intended to constitute Lender's consent to or approval of any such sale or transfer of all or any part of the Premises.

2.16 **Suits to Protect the Premises**. Lender shall have power to institute and maintain such suits and proceedings as it may deem expedient (i) to prevent any impairment of the Premises by any acts which may be unlawful or constitute a Default under this Deed, (ii) to preserve or protect its interest in the Premises and in the incomes, rents, issues, profits and revenues arising therefrom, and (iii) to restrain the enforcement of or compliance with any legislation or other governmental enactment, rule or order that may be unconstitutional or otherwise invalid, if the enforcement of or compliance with such enactment, rule or order would impair the security hereunder or be prejudicial to the interest of Lender.

2.17 **Proof of Claim**. In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition or other proceedings affecting Borrower, its creditors or its property, Lender, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have the claim of Lender allowed in such proceedings for the entire amount of the Secured Indebtedness at the date of the institution of such proceedings and for any additional amount of the Secured Indebtedness after such date.

2.18 **WAIVER OF BORROWER'S RIGHTS**. BY EXECUTION OF THIS DEED, BORROWER EXPRESSLY: (A) ACKNOWLEDGES THE RIGHT OF LENDER TO ACCELERATE THE INDEBTEDNESS EVIDENCED BY THE NOTE AND ANY OTHER SECURED INDEBTEDNESS AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY BORROWER WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE (IF ANY) AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS DEED; (B) WAIVES ANY AND ALL RIGHTS WHICH BORROWER MAY HAVE UNDER THE CONSTITUTION OF THE UNITED STATES OF AMERICA (INCLUDING, WITHOUT LIMITATION, THE FIFTH AND FOURTEENTH AMENDMENTS THEREOF), THE VARIOUS PROVISIONS OF THE CONSTITUTIONS FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW, (1) TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE (IF ANY) AS IS SPECIALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS DEED, AND (2) CONCERNING THE APPLICATION, RIGHTS OR BENEFITS OF ANY STATUTE OF LIMITATION OR ANY MORATORIUM, REINSTATEMENT, MARSHALING,

FORBEARANCE, APPRAISEMENT, VALUATION, STAY, EXTENSION, HOMESTEAD, EXEMPTION OR REDEMPTION LAWS; (C) ACKNOWLEDGES THAT BORROWER HAS READ THIS DEED AND ANY AND ALL QUESTIONS OF BORROWER REGARDING THE LEGAL EFFECT OF THIS DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO BORROWER, AND BORROWER HAS CONSULTED WITH COUNSEL OF BORROWER_S CHOICE PRIOR TO EXECUTING THIS DEED; AND (D) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF BORROWER HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY BORROWER AS PART OF A BARGAINED-FOR LOAN TRANSACTION AND THAT THIS DEED IS VALID AND ENFORCEABLE BY LENDER AGAINST BORROWER IN ACCORDANCE WITH ALL THE TERMS AND CONDITIONS HEREOF.

## ARTICLE III

**3.01** Successors and Assigns. This Deed shall insure to the benefit of and be binding upon Borrower and Lender and their respective heirs, executors, legal representatives, successors, successors-in-title and assigns. Whenever a reference is made in this Deed to Borrower or Lender such reference shall be deemed to include a reference to the heirs, executors, legal representatives, successors, successors-in-title and assigns of Borrower and Lender, as the case may be. The provisions of this Paragraph 3.01 are subject to the restrictions on transfer of the Premises contained elsewhere in this Deed.

**3.02** Terminology. All personal pronouns used in this Deed whether used in the masculine, feminine or neuter gender, shall include all other genders; the singular shall include the plural, and vice versa. Titles of Articles and Paragraphs are for convenience only and neither limit nor amplify the provisions of this Deed, and all references herein to Articles, Paragraphs or subparagraphs shall refer to the corresponding Articles, Paragraphs or subparagraphs of this Deed unless specific reference is made to Articles, Paragraphs or subparagraphs of another document or instrument.

**3.03** Severability. If any provisions of this Deed or the application thereof to any person or circumstance shall be invalid or unenforceable to any extent, then (a) the remainder of this Deed and the application of such provisions to other persons or circumstances shall not be affected thereby and shall be enforced to the greatest extent permitted by law, and (b) the provision or provisions hereof held to be invalid or unenforceable shall be reformed to the extent necessary to become valid and enforceable, consistent with the purpose and intent of Borrower and Lender with respect thereto.

**3.04** Applicable Law. This Deed shall be governed by and construed and enforced in accordance with the substantive, and not the conflict, laws of the State of Georgia.

**3.05** Notices. Any and all notices, elections or demands permitted or required to be made under this Deed shall be in writing, signed by the party giving such notice, election or demand, and shall be delivered personally, or sent by overnight courier service by a company regularly engaged in the business of delivering business packages (such as Federal Express or UPS), or sent by registered or certified mail, to the other party at the address set forth below, or at such other address within the continental United States of America as may be supplied in writing. The date of personal delivery or, if sent by overnight courier then the date of delivery as evidenced by the courier's receipt, or, if mailed, then the date of delivery as evidenced by the receipt for the certified mail, shall be the effective date of such notice, election or demand. For the purposes of this Deed:

The address of Borrower is:
**David M. Cunningham**
**77 12th Street, NE, Unit 1715**
**Atlanta, GA 30309**

The address of Lender is:
**Bryan H. Keith**
**4210 Conway Valley Rd NW**

Atlanta, GA 30327

**3.06** Replacement of Note. Upon receipt of evidence reasonably satisfactory to Borrower of the loss, theft, destruction or mutilation of the Note, and in the case of any such loss, theft or destruction, upon delivery of an indemnity agreement reasonably satisfactory to Borrower, or in the case of any such mutilations, upon surrender and cancellation of the Note, Borrower will execute and deliver, lieu thereof, a replacement Note, identical in form and substance to the Note and dated as of the date of the Note and upon such execution and delivery all references in this Deed to the Note shall be deemed to refer to any such replacement Note.

**3.07** Assignment. This Deed, and any interest herein or portion hereof, is assignable by Lender, and any such assignment by Lender shall operate to vest in the assignee all rights and powers herein conferred upon and granted to Lender.

**3.08** Time of the Essence. Time of the essence with respect to each and every covenant, agreement and obligation of Borrower under this Deed, the Note and any and all other instruments now or hereafter evidencing, securing or otherwise relating to the Secured Indebtedness.

**3.09** Undefined Terms. All capitalized buy undefined terms used herein shall have the meaning ascribed to such terms in the Loan Agreement.

**3.10** **Cross-Collateralization/Cross-Default Provision.** Borrower acknowledges and consents that in the event there is a default by Borrower under this loan that said default will constitute a default under all other loans presently in existence or hereafter created between Borrower and Lender. Further, Borrower acknowledges and consents that the collateral under this loan shall be cross collateralized with the collateral under all other loans between Lender and Borrower and the collateral described herein shall constitute collateral for all other loans between Borrower and Lender.

IN WITNESS WHEREOF, Borrower has executed this Deed under seal, as of the day and year first above written.

Signed, sealed and delivered in
the presence of:

Unofficial Witness

Notary Public

VICTORIA WILLIS NOTARY EXPIRES GEORGIA 08-09-2025 PUBLIC NEWTON COUNTY

David M. Cunningham (Seal)

Signed, sealed and delivered in
the presence of:

Unofficial Witness

T'Challa S. Pesante (Seal)

VICTORIA WILLIS NOTARY EXPIRES GEORGIA 08-09-2025 PUBLIC NEWTON COUNTY

Notary Public

Signed, sealed and delivered in
the presence of:

Unofficial Witness

Luis A. Beltre (Seal)

Notary Public

VICTORIA WILLIS NOTARY EXPIRES GEORGIA 08-09-2025 PUBLIC NEWTON COUNTY

**EXHIBIT A**
**LEGAL DESCRIPTION OF LAND**

All that tract or parcel of land lying and being in Land Lots 49 and 50 of the 17th District, Fulton County, Georgia, being Unit 2 as depicted on that Plat recorded in Plat Book 211, Page 239, survey for Satullah Holdings, LLC, by A.S. Giometti & Associates, A.S. Giometti, R.L.S. No. 1125, Fulton County Records, together will all rights, privileges, easements and benefits, including rights to use common areas, as granted under that Declaration of Covenants, Conditions and Restrictions for The 729-743 Lambert Drive Development dated March 31, 2000, and recorded in Deed Book 28815, Page 150, as re-recorded in Deed Book 28875, Page 234, Fulton County Records.

**EXHIBIT B**
**LIST OF TITLE EXCEPTIONS**

1. All taxes for the year 2023 and subsequent years, not yet due and payable.

2. All matters shown on survey recorded in Plat Book 211, Page 239, Fulton County, Georgia records.

3. Rights of adjoining property owners in and to any and all party walls.

4. Rights of Tenants in possession, as tenants only, resulting from any unrecorded leases and/or occupancy agreements of the premises, if any, and/or the lands of the insured property herein described.

5. Permit for Anchors, Guy Poles and Wires from M. T. Lambert Company to Georgia Power Company, a corporation, dated July 31, 1950, filed for record August 1950 at 2:17 p.m., recorded in Deed Book 2551, Page 330, Fulton County, Georgia Records.

6. Right of Way Deed from M. T. Lambert Company, a Partnership, M. T. Lambert, Partner, M. T. Lambert, Jr., Partner and John J. Lambert, Partner to State Highway Department of Georgia, dated May 20, 1952, filed for record June 2, 1952 at 3:10 p.m., recorded in Deed Book 3006, Page 13, aforesaid Records.

7. Easement from John J. Lambert to Georgia Power Company, dated May 20, 1987, filed for record August 28, 1987 at 8:56 a.m., recorded in Deed Book 11033, Page 440, aforesaid Records.

8. Lines, pipelines, rights, and easements of the City of Atlanta to use, maintain, and replace any sanitary sewer and storm water drainage lines and facilities which may cross the Land.

**Exhibit "C"**

Deed Book 66997 Page 150
Filed and Recorded 07/17/2023 06:15:00 P
2023-0184369
CHÉ ALEXANDER
Clerk of Superior Court
Fulton County, GA
Participant IDs: 2979894615
7067927936

**Prepared By:**
Weissman PC
3500 Lenox Road, 4th Floor
Atlanta, GA 30326

**File No.: W-09717-23-CM**

**Parcel ID:** 17 005000010432

Conveyance made without the benefit of a title examination. Deed Preparation Only.

## LIMITED WARRANTY DEED

**STATE OF GEORGIA**
**COUNTY OF FULTON**

THIS INDENTURE, made this 6/22/23 by and between **David M. Cunningham, Tchalla Pesante, Bryan Keith and Luis Alberto Beltre**, as party or parties of the first part, hereinafter called Grantor, and **Deaf Star Studios LLC, a Georgia limited liability company**, as party or parties of the second part, hereinafter called Grantee (the words "Grantor" and "Grantee" to include their respective heirs, successors and assigns where the context requires or permits).

WITNESSETH that: Grantor, for and in consideration of the sum of TEN DOLLARS AND NO/100 ($10.00) AND OTHER VALUABLE CONSIDERATIONS in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee, the following described property, to-wit:

**SEE ATTACHED EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF BY REFERENCE HERETO**

THIS CONVEYANCE is made subject to all zoning ordinances, easements and restrictions of record affecting said described property.

TO HAVE AND TO HOLD the said tract or parcel of land, with all and singular the rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining, only to the proper use, benefit and behoof of the said Grantee, forever IN FEE SIMPLE.

AND THE SAID Grantor will warrant and forever defend the right and title to the above described property unto the said Grantee against the claims of all persons claiming by, through, or under Grantor herein.

This Deed is made subject to that certain Deed to Secure Debt, Security Agreement, and Fixture Filing in favor of Bryan H. Keith, dated 06/22/2023 and filed on 07/17/2023 in Deed Book 66994, Page 241, Fulton County, Georgia Records, in the principal amount of $435,000.00.



https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=83869246&key1=66997&key2=150&county=60&countyname=FULTON&userid=607967&a… 1/3

IN WITNESS WHEREOF, the Grantor has signed and sealed this Deed, on the date and year above written.

Signed, sealed and delivered
in the presence of:

Unofficial Witness

Notary Public

My Commission Expires:

VICTORIA WILLIS NOTARY EXPIRES GEORGIA 08-09-2025 PUBLIC NEWTON COUNTY

(Seal)
David M. Cunningham

Signed, sealed and delivered
in the presence of:

Unofficial Witness

Notary Public

My Commission Expires

VICTORIA WILLIS NOTARY EXPIRES GEORGIA 08-09-2025 PUBLIC NEWTON COUNTY

(Seal)
Tchalla Pesante

Signed, sealed and delivered
in the presence of:

Unofficial Witness

Notary Public

My Commission Expires: March 27, 2027

(Seal)
Bryan Keith

JACASIS BROWNING NOTARY PUBLIC Cobb County State of Georgia My Comm. Expires Mar. 27, 2027

Signed, sealed and delivered
in the presence of:

Unofficial Witness

Notary Public

My Commission Expires: 8/9/25

VICTORIA WILLIS NOTARY EXPIRES GEORGIA 08-09-2025 PUBLIC NEWTON COUNTY

(Seal)
Luis Alberto Beltre

**EXHIBIT A**
**LEGAL DESCRIPTION OF LAND**

All that tract or parcel of land lying and being in Land Lots 49 and 50 of the 17th District, Fulton County, Georgia, being Unit 2 as depicted on that Plat recorded in Plat Book 211, Page 239, survey for Satullah Holdings, LLC, by A.S. Giometti & Associates, A.S. Giometti, R.L.S. No. 1125, Fulton County Records, together will all rights, privileges, easements and benefits, including rights to use common areas, as granted under that Declaration of Covenants, Conditions and Restrictions for The 729-743 Lambert Drive Development dated March 31, 2000, and recorded in Deed Book 28815, Page 150, as re-recorded in Deed Book 28875, Page 234, Fulton County Records.

CM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-RC

PT-61 (Rev. 2/18) To be filed in **FULTON COUNTY** **PT-61 060-2023-022551**

| SECTION A – SELLER'S INFORMATION (Do not use agent's information) | | SECTION C – TAX COMPUTATION | |
|---|---|---|---|
| SELLER'S BUSINESS / ORGANIZATION / OTHER NAME<br>David M. Cunningham, Tchalla Pesante, Bryan Keith and Lui ...* | | Exempt Code<br>If no exempt code enter NONE | NONE |
| MAILING ADDRESS (STREET & NUMBER)<br>77 12th Street NE Unit 1715 | | 1. Actual Value of consideration received by seller<br>Complete Line 1A if actual value unknown | $0.00 |
| CITY, STATE / PROVINCE / REGION, ZIP CODE, COUNTRY<br>Atlanta, GA 30309 USA | DATE OF SALE<br>6/22/2023 | 1A. Estimated fair market value of Real and Personal property | $0.00 |
| SECTION B – BUYER'S INFORMATION (Do not use agent's information) | | 2. Fair market value of Personal Property only | $0.00 |
| BUYERS'S BUSINESS / ORGANIZATION / OTHER NAME<br>Deaf Star Studios LLC, a Georgia limited liability company | | 3. Amount of liens and encumbrances not removed by transfer | $0.00 |
| MAILING ADDRESS (Must use buyer's address for tax billing & notice purposes)<br>741 Lambert Drive NE | | 4. Net Taxable Value<br>(Line 1 or 1A less Lines 2 and 3) | $0.00 |
| CITY, STATE / PROVINCE / REGION, ZIP CODE, COUNTRY<br>Atlanta, GA 30324 USA | Check Buyers Intended Use<br>( ) Residential ( ) Commercial<br>( ) Agricultural ( ) Industrial | 5. TAX DUE at .10 per $100 or fraction thereof<br>(Minimum $1.00) | $0.00 |

**SECTION D – PROPERTY INFORMATION (Location of Property (Street, Route, Hwy, etc))**

| HOUSE NUMBER & EXTENSION (ex 265A) | PRE-DIRECTION, STREET NAME AND TYPE, POST DIRECTION | | SUITE NUMBER |
|---|---|---|---|
| 741 | Lambert Drive NE | | |
| COUNTY | CITY (IF APPLICABLE) | MAP & PARCEL NUMBER | ACCOUNT NUMBER |
| FULTON | Atlanta | 17 005000010432 | |

| TAX DISTRICT | GMD | LAND DISTRICT | ACRES | LAND LOT | SUB LOT & BLOCK |
|---|---|---|---|---|---|
| | | | | | |

**SECTION E – RECORDING INFORMATION (Official Use Only)**

| DATE | DEED BOOK | DEED PAGE | PLAT BOOK | PLAT PAGE |
|---|---|---|---|---|
| | 66997 | 150 | | |

**ADDITIONAL BUYERS**
**None**

**...* This symbol signifies that the data was too big for the field. The original values are shown below.**
SELLER'S BUSINESS NAME: David M. Cunningham, Tchalla Pesante, Bryan Keith and Luis Alberto Beltre

**Exhibit "D"**

# NOTICE OF SALE UNDER POWER

OH YEAH, OH YEAH, this is the foreclosure sale of 741 Lambert Drive, Atlanta, Georgia. The time is 2:46 on September 3, 2024. I am Eric Breithaupt of the law firm of Jones & Walden. This sale is for cash or cash equivalents payable by no later than 3:00 p.m. today. The property to be sold having been duly advertised in a newspaper of general circulation in Fulton County, Georgia for four consecutive weeks, the property is now offered for sale:

Please take notice that this property may be the subject of an automatic stay in bankruptcy. At 9:06 a.m. on September 3, 2024, Deaf Star Studios, LLC filed a second Chapter 11 bankruptcy case in the United States Bankruptcy Court for the Northern District of Georgia (Case Number 24-59255). The holder of the Security Deed related to this sale reasonably believes that 11 U.S.C. §362(n) applies and that there is not automatic stay. This property is therefore offered with no warranty of title and is subject to confirmation by the Bankruptcy Court after notice and hearing that no stay is in effect and that a Deed Under Power may be tendered to any buyer.

By virtue of the power of sale contained in the certain "Deed to Secure Debt, Security Agreement, and Fixture Filing" from David M. Cunningham, T'Challa S. Pesante, and Luis A. Beltre (collectively, hereinafter the "Grantor") to Bryan K. Keith (hereinafter the "Grantee"), dated June 22, 2023, and recorded July 17, 2023, in Deed Book 66994, beginning at Page 241, of the records of the Clerk of Superior Court of Fulton County, Georgia ("Security Deed"), originally having been given to secure a Note in the amount of $435,000.00, will be sold by the undersigned at public outcry to the highest bidder for cash before the Courthouse door at Fulton County, Georgia, within the legal hours of sale on the first Tuesday in **SEPTEMBER 2024 (September 3, 2024)**, the property described in said deed, to wit:

> All that tract or parcel of land lying and being in Land Lots 49 and 50 of the 17th District, Fulton County, Georgia, being Unit 2 as depicted on that Plat recorded in Plat Book 211, Page 239, survey for Satullah Holdings, LLC, by A.S. Giometti & Associates, A.S. Giometti, R.L.S. No. 1125, Fulton County Records, together will all rights, privileges, easements and benefits, including rights to use common areas, as granted under that Declaration of Covenants, Conditions and Restrictions for The 729-743 Lambert Drive Development dated March 31, 2000, and recorded in Deed Book 28815, Page 150, as re-recorded in Deed Book 28875, Page 234, Fulton County Records.

The debt secured by said Security Deed has been and is hereby declared due and payable in full by reason of default under the terms and provisions of said Security Deed and the terms of the Note and agreements secured thereby. The debt remaining in default and unpaid, this sale will be made for the purpose of paying the indebtedness and interest thereon, together with any other indebtedness due and owing by Grantor to Grantee, including all expenses of this sale, including attorney's fees, notice of intent to collect attorney's fees having been given.

The entity that has full authority to negotiate, amend, and modify all terms of the mortgage with the debtor is: Bryan H. Keith, 4210 Conway Valley Road, NW, Atlanta, GA 30327. Phone: (470) 800-3369. Please understand that the secured creditor is not required to negotiate, amend, or modify the terms of the mortgage instrument and this does not constitute an offer or commitment to do so.

Said property will be sold subject to: (a) any outstanding ad valorem taxes including taxes which are a lien, but not yet due and payable, (b) any matters which might be disclosed by an accurate survey and inspection of the property, and (c) any assessments, liens, security deeds, encumbrances, zoning ordinances, restrictions, covenants and other matters of record superior to the Security Deed first set out above.

On June 22, 2023, Grantor executed that certain "Limited Warranty Deed" recorded on July 17, 2023, at Deed Book 66997, beginning at Page 150, of the records of the Clerk of Superior Court of Fulton County, Georgia, whereby Grantor conveyed the above-described real property to Deaf Star Studios LLC, specifically subject to

Grantee's Security Deed. To the best of the knowledge of Grantee, title to said property is vested in the name of Deaf Star Studios LLC.

Bryan H. Keith, as Attorney-in-fact for David M. Cunningham, T'Challa S. Pesante, and Luis A. Beltre
**By: JONES & WALDEN LLC**
Eric J. Breithaupt, Esq.
Attorney for Bryan H. Keith
699 Piedmont Avenue, NE, Atlanta, Georgia 30308
(404) 564-9300
Attn: Tessa Vuncannon

THIS LAW FIRM IS ATTEMPTING TO COLLECT A DEBT; ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Lender: Bryan H. Keith

Borrower: David M. Cunningham, T'Challa S. Pesante, & Luis A. Beltre

Address: 741 Lambert Drive, Atlanta, Fulton County, Georgia

Opening Bid: $ $560,596.47

Overbid:

$________ by ____________________

Sold to: Bryan Keith

for: $ 560,596-47

Time: 2:56

Witness: WM 2:56 PM

803 842-2401

*Please obtain contact info if sold to a 3rd party.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **IN RE:**<br><br>**DEAF STAR STUDIOS, LLC,**<br><br>**Debtor,** | **CHAPTER 11**<br>**SUBCHAPTER V**<br><br>**CASE NO. 24-59255-bem** |
| **BRYAN H. KEITH,**<br><br>**Movant,**<br><br>**v.**<br><br>**DEAF STAR STUDIOS, LLC,**<br><br>**Respondent.** | **CONTESTED MATTER** |

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing *Motion to Confirm No Automatic Stay is in Effect or in the Alternative for Relief from Automatic Stay* (the "Motion") and the *Notice of Hearing* (the "Notice") using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to the Motion and Notice to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

- **Natalyn M. Archibong** nmarchibong@gmail.com
- **Alan Hinderleider** Alan.Hinderleider@usdoj.gov

I further certify that on this day I caused a copy of the Motion and Notice to be served via United States First Class mail with adequate postage prepaid on all parties listed on the attached mailing matrix.

This 4th day of September, 2024.

**JONES WALDEN LLC**
*/s/ Eric J. Breithaupt*
Eric J. Breithaupt
Georgia Bar No. 596142
699 Piedmont Ave NE
Atlanta, GA 30308
(404) 564-9300
EBreithaupt@joneswalden.com
*Attorney for Bryan H. Keith*

Label Matrix for local noticing
113E-1
Case 24-59255-bem
Northern District of Georgia
Atlanta
Wed Sep 4 10:26:20 EDT 2024

Natalyn M. Archibong
Law Office of Natalyn M. Archibong
374 Maynard Terrace SE
Suite 206
Atlanta, GA 30316-1771

Bryan H. Keith
Eric J. Breithaupt
Jones Walden, LLC 699 Piedmont Avenue SE
Atlanta, GA 30308

Deaf Star Studios, LLC
741 Lambert Dr. NE
Atlanta, GA 30324-4145

Fulton County Tax Commissioner
141 Prior Street Suite 1106
Atlanta, GA 30303-3446

Alan Hinderleider
Office of the United States Trustee
362 Richard B Russell Federal Building
75 Ted Turner Drive, S.W.
Atlanta, GA 30303-3315

Internal Revenue Service
P. O. Box 7346
Philadelphia, PA 19101-7346

Investa Services
1266 West Paces Ferry Road Suite 517
Atlanta, GA 30327-2306

Secretary of the Treasury
15th & Pennsylvania Avenue, NW
Washington, DC 20200

U. S. Securities and Exchange Commission
Office of Reorganization
Suite 900
950 East Paces Ferry Road, NE
Atlanta, GA 30326-1382

United States Attorney
Northern District of Georgia
75 Ted Turner Drive SW, Suite 600
Atlanta GA 30303-3309

United States Trustee
362 Richard Russell Federal Building
75 Ted Turner Drive, SW
Atlanta, GA 30303-3315